5 P.3d 1070 (2000)
129 N.M. 266
2000-NMCA-058
In the Matter of the ESTATE OF Patricia Jean HARRINGTON, Deceased,
James B. Harrington, Jr. and Custom Beeper Company, Inc., Plaintiffs-Appellants.
v.
Lorna Bannigan, Richard Harwood, Penny Harwood, Lisa Kleiboer, Dana Cordova, and James McCormick, Defendants-Appellees.
Nos. 19,911, 19,912.
Court of Appeals of New Mexico.
June 2, 2000.
*1071 Oliver B. Cohen, Albuquerque, Howard L. Anderson, Albuquerque, for Appellants.
Ronald G. Harris, Foster Johnson Harris McDonald, Albuquerque, Robert N. Singer, Singer, Smith & Williams, P.A., Albuquerque, George R. McFall, Suzanne M. Barker, Jennifer A. Noya, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Appellees.

OPINION
PICKARD, Chief Judge.
{1} James B. Harrington, Sr. (Harrington) appeals the trial court's decision to liquidate a business he owned co-equally with his wife (Decedent) prior to her death. Upon her death, Decedent passed her entire estate, including her interest in the business, by will to her sister and three daughters (Devisees). The persons nominated to serve as her personal representatives applied for informal probate of Decedent's will, and the trial court granted the application. Harrington petitioned the trial court to set aside the informal probate of Decedent's will on the ground that the will was invalid. By challenging the validity of Decedent's will, Harrington converted what had been an informal proceeding to a formal proceeding, as we explain below.
{2} In the course of the formal proceeding, Decedent's personal representatives, acting on behalf of her estate and the Devisees (collectively, the Estate), called a shareholders' meeting in order to elect directors for the business. Harrington refused to attend the meeting, declaring that he would not operate the business with the Devisees. The Estate responded to Harrington's refusal by petitioning the trial court to appoint a receiver to liquidate the business. The Estate claimed the trial court should grant its petition on the grounds that the parties could not agree on how to operate the business and Harrington had improperly used business funds for his personal purposes.
{3} The trial court denied the Estate's request. As part of its order, however, the trial court informed the parties that if they failed to resolve their differences by a certain date, it would appoint a receiver to liquidate the business. After the deadline passed and no resolution had been reached, the trial court appointed a receiver. The trial court ordered the receiver to take charge of all the assets used in the business and to arrange for the sale of the business in a commercially reasonable manner. The trial court also enjoined Harrington from participating in and *1072 transferring assets from, the business. Approximately eight months later, the receiver found a buyer willing to pay an acceptable price for the business. The trial court ordered the receiver to sell the business to the buyer.
{4} Harrington filed a notice of appeal from that order within 30 days. Prior to filing his notice of appeal, however, Harrington also filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 1-012(B)(1) NMRA 2000. The trial court did not conduct a hearing on the motion until after Harrington's appeal was underway. To our knowledge, the trial court still has not formally ruled upon the motion, although Harrington states in his brief in chief that the trial court orally denied his motion from the bench at the motion hearing and then sent the parties a letter memorializing its denial. Notwithstanding the fact that the trial court has not entered a written order denying or granting the motion, the parties have fully addressed the issue of subject matter jurisdiction in their appellate briefs. Indeed, that issue is the central issue in Harrington's appeal.
{5} On appeal, Harrington claims the trial court erred because, as a trial court sitting in probate, it lacked subject matter jurisdiction to liquidate the business. In the alternative, he claims that even if the trial court had jurisdiction to liquidate the business, its determination to do so pursuant to either NMSA 1978, § 45-3-911 (1975) or NMSA 1978, § 53-16-16 (1967) is not supported by substantial evidence. Harrington ultimately requests that we declare the receivership void ab initio.
{6} The Estate claims we can entertain neither Harrington's subject matter jurisdiction claim nor his substantial evidence claim because the trial court's order appointing a receiver was a final order from which Harrington failed to timely appeal. In the alternative, the Estate claims the trial court had jurisdiction to liquidate the business and that its decision to do so is supported by substantial evidence.
{7} For the reasons stated below, we disagree with the Estate that our ability to review Harrington's subject matter jurisdiction claim is controlled by whether the trial court's receivership order constitutes a final order. Our disagreement with the Estate is inconsequential, however, because we conclude as a matter of law that the trial court had jurisdiction to liquidate the business. We agree with the Estate that the trial court's order appointing a receiver was a final order. In light of our holding on the jurisdiction issue, we also agree with the Estate that Harrington's failure to timely appeal from the trial court's order appointing a receiver precludes us from entertaining his substantial evidence claim. Accordingly, we affirm the trial court's exercise of jurisdiction and dismiss the appeal to the extent that it alleges errors committed pursuant to the exercise of that jurisdiction.

DISCUSSION

I. APPELLATE COURT JURISDICTION
{8} The first issue we address is whether we have the authority to review Harrington's subject matter jurisdiction claim, notwithstanding the facts that the trial court has not entered a written order on Harrington's Rule 1-012(B)(1) motion and that the appeal was not timely filed from an earlier final order. We can, as a general rule, only review formal written orders or judgments from which an appellant has timely appealed. See Rule 12-201 NMRA 2000 (stating that appeals from non-evidentiary rulings must be commenced within thirty days of entry of final judgment); Rice v. Gonzales, 79 N.M. 377, 378, 444 P.2d 288, 289 (1968) (concluding that because the notice of appeal was not timely, this Court lacked jurisdiction to hear the appeal). The rationale underlying this rule is that a district court's oral rulings merely evidence its intentions, intentions which "can change at any time before the entry of a final judgment." Bouldin v. Bruce M. Bernard, Inc., 78 N.M. 188, 189, 429 P.2d 647, 648 (1967).
{9} It follows from the general rule that we technically lack jurisdiction to review Harrington's subject matter jurisdiction claim. This is true because, although Harrington raised this claim pursuant to a Rule 1-012(B)(1) motion at the trial court level, a motion that Harrington claims has been denied *1073 both orally and in a letter, the trial court has yet to enter a formal written order granting or denying the motion. See Rice, 79 N.M. at 378, 444 P.2d at 289; Hamilton v. Doty, 65 N.M. 270, 274, 335 P.2d 1067, 1070 (1958) (ruling that statements of counsel in the briefs are not part of the record). In addition, there existed an earlier final order from which Harrington did not appeal. In light of the foregoing, the issue becomes whether we must strictly adhere to the general rules and neglect Harrington's jurisdiction claim, or whether there is some good reason why we should address his claim. We favor addressing his claim under the unique facts present in this case. See Peterson v. Peterson, 98 N.M. 744, 746, 652 P.2d 1195, 1197 (1982).
{10} In Peterson, the New Mexico Supreme Court addressed the issue of whether a district court's failure to enter findings of fact and conclusions of law with its judgment, which failure resulted in technical error, required the Supreme Court to remand the case in order that the district court could correct its error. See id. Answering in the negative, our Supreme Court stated:
[C]ertainly little would be accomplished, other than incurring additional delay and further expense, in remanding this case back to the trial court for the purpose of entering its findings of fact and conclusions of law again in concert with another judgment. Although we must insist upon compliance with the Rules of Civil Procedure, in this case no meaningful purpose would be furthered to remand this case back to the trial court for this purpose alone.
Id.
{11} As in Peterson, we see no meaningful reason to adhere to the general rules in the case at bar. If we do not address Harrington's subject matter jurisdiction claim at this time, we would merely be postponing the inevitable. Irrespective of the conclusions we reach in the other issues presented for our review, Harrington's jurisdictional claim will not vanish or go away. The trial court will continue to retain the authority of formally ruling on Harrington's Rule 1-012(B)(1) motion, a motion that we liken to a Rule 1-060(B)(4) motion because Harrington's motion alleges that the entire proceedings below were void. See Rule 1-060(B)(4) NMRA 2000 (allowing relief from a final judgment on the ground that the judgment is void for lack of subject matter jurisdiction); Standard Oil Co. of California v. United States, 429 U.S. 17, 17-19, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976) (ruling that district courts can entertain Rule 60(B) motions after appeal has been taken without leave of the appellate court); 12 James Wm. Moore, Moore's Federal Practice § 60.64 (3d ed.1997) [hereinafter Moore] ("Nomenclature is not important. The label or description that a party puts on its motion does not control whether the party should be granted or denied relief...."). After the trial court renders its decision on Harrington's Rule 1-012(B)(1) motion or a subsequent Rule 1-060(B) motion, Harrington will unquestionably appeal the matter to this Court. At that time, we will then have the responsibility of entertaining the exact issue now before us for review. This last point, which we find determinative, warrants further explanation.
{12} The conclusions we reach on the non-jurisdictional issues before us for review will finally determine those matters. The only issue Harrington will be able to maintain at the trial court level, and then again on appeal, is the one going to the trial court's subject matter jurisdiction. See Rule 1-060(B)(4) (stating that a motion under this Rule does not affect the finality of a judgment); James v. Brumlop, 94 N.M. 291, 294, 609 P.2d 1247, 1250 (Ct.App.1980) (ruling that a party may appeal the denial of a Rule 1-060(B) motion, but the scope of appellate review is limited to the correctness of the denial of the motion, and not to the correctness of the underlying judgment). This issue, as we stated above, will give rise to and constitute a collateral attack on the trial court's final judgment. We will then review the trial court's formal disposition of Harrington's subject matter jurisdiction motion under a de novo standard of review on appeal. See Classen v. Classen, 119 N.M. 582, 585, 893 P.2d 478, 481 (Ct.App.1995) (ruling that we review de novo the grant or denial of a Rule 1-060(B)(4) motion).
*1074 {13} In light of the standard of review that will govern the inevitable appeal from the trial court's decision, it becomes clear why it would be a waste of resources, both for the litigants and for this Court, for us not to address Harrington's jurisdiction claim today. No matter what decision the trial court renders on this pure issue of law, we will have to conduct our own review. See id. Additionally, we will not defer to the trial court's decision in any way because the resolution of this issue in no way depends on facts or inferences drawn from facts. See id. Given that reality, coupled with the facts that the parties have fully addressed the issue in their briefs and that the trial court has given every indication that it will deny the motion, we see no reason not to address Harrington's subject matter jurisdiction claim at this time. See Principal Mut. Life Ins. Co. v. Straus, 116 N.M. 412, 415, 863 P.2d 447, 450 (1993) ("There is a strong policy in New Mexico of disfavoring piecemeal appeals ... and of avoiding fragmentation in the adjudication of related legal or factual issues...."); Moore, supra, § 60.67[2][a] (averring that if an appellant is concerned with an issue involving a matter of law that was not litigated or formally ruled upon at the trial court level, there is no reason for the appellant not to raise the issue in the appeal and no reason to have a Rule 1-060(B) proceeding at all). We will not strictly adhere to the general rules when no legitimate purpose will be served by doing so. See Peterson, 98 N.M. at 746, 652 P.2d at 1197. We will entertain Harrington's subject matter jurisdiction claim.

II. DISTRICT COURT JURISDICTION
{14} The second issue we address is whether the trial court, as a district court sitting in probate, had subject matter jurisdiction to liquidate the business. District courts "have original jurisdiction in all matters and causes not excepted in this [Constitution of the State of New Mexico], and such jurisdiction of special cases and proceedings as may be conferred by law." N.M. Const. art. VI, § 13. Probate proceedings are special proceedings and, as a result, district courts sitting in probate possess only the jurisdiction conferred upon them by statute. See In re Hickok's Will, 61 N.M. 204, 216, 297 P.2d 866, 874 (1956).

A. Probate Code

{15} The jurisdiction enjoyed by district courts sitting in probate is set forth in the New Mexico Uniform Probate Code at NMSA 1978, § 45-1-302 (1978) and at NMSA 1978, § 45-1-303 (1975). Section 45-1-302(A) & (B) defines the district courts' jurisdiction in formal probate proceedings, while Section 45-1-302(C) and NMSA 1978, § 45-1-302.1 (1977) define the district courts' and the probate courts' jurisdiction in informal probate proceedings. Read together, these provisions invest district courts with exclusive original jurisdiction over formal probate proceedings and with concurrent original jurisdiction, which it shares with probate courts, over informal probate proceedings.
{16} In the case at bar, we concern ourselves solely with determining the amount of jurisdiction Section 45-1-302 confers upon district courts because Harrington triggered a formal proceeding when he challenged the validity of Decedent's will. See NMSA 1978, § 45-3-401(A) (1975) ("A formal testacy proceeding is litigation to determine whether a decedent left a valid will."). In making this determination, "we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background." Key v. Chrysler Motors Corp., 1996-NMSC-038, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996). Section 45-1-302 states in relevant part:
A. The district court has exclusive original jurisdiction over all subject matter relating to:
(1) formal proceedings with respect to the estates of decedents, including determinations of testacy, appointment of personal representatives, constructions of wills, administration and expenditure of funds of estates, determination of heirs and successors of decedents and distribution and closing of estates;
(2) estates of missing and protected persons;

*1075 (3) protection of incapacitated persons and minors; and
(4) trusts.
B. The district court in formal proceedings shall have jurisdiction to determine title to and value of real or personal property as between the estate and any interested person, including strangers to the estate claiming adversely thereto. The district court has full power to make orders, judgments and decrees and to take all other action necessary and proper to administer justice in matters which come before it.

1. Language

{17} We conclude, based on the foregoing language, that the Legislature intended to confer upon district courts general civil jurisdiction in formal probate proceedings when it enacted Section 45-1-302. See Gonzalez v. Superior Court, 117 Ariz. 64, 570 P.2d 1077, 1079 (1977) (en banc). In Gonzalez, the Arizona Supreme Court considered "the extent of the jurisdiction of the [district court sitting in probate] under the probate code to deal with a matter not involved in the actual administration of the estate." Id. at 1078. The Gonzalez court, after interpreting a statute substantially equivalent to our Section 45-1-302, ruled that district courts sitting in probate have "full constitutional jurisdiction in matters which might arise affecting estates." Gonzalez, 570 P.2d at 1079; see 1 Uniform Probate Code Practice Manual 29 (Richard V. Wellman, ed., 2d ed.1977) (stating that Uniform Probate Code Section 1-302 is "designed to describe the probate court [district court sitting in probate] in terms that make it equivalent in stature to a court of general jurisdiction").
{18} We see no reason to depart from the decision set forth in Gonzales and hereby rule that district courts sitting in probate possess general civil jurisdiction in formal probate proceedings. It follows from this rule, and we therefore hold, that the trial court had jurisdiction to liquidate the business pursuant to either Section 45-3-911 or Section 53-16-16 as long as the necessary parties were properly before it and proper procedures were utilized. See NMSA 1978, § 45-1-103 (1975) ("The principles of law and equity supplement the Probate Code's ... provisions, unless specifically displaced by particular provisions of the code."). In this case, Harrington makes no claims of lack of personal jurisdiction or utilization of improper procedures.

2. Background

{19} Our holding finds additional support in the background of Section 45-1-302. The Legislature, motivated by a desire to "promote a speedy and efficient system for the settlement of the estate of the decedent," adopted the Uniform Probate Code in 1975. See 1975 N.M.Laws, ch. 257, §§ 1-101, 1-102(B)(3); Unif. Probate Code § 1-102, 8 U.L.A. 24, 26 (1998). In order to promote and achieve this efficiency, it is only logical that the Legislature intended to, and in fact did, confer general civil jurisdiction upon district courts sitting in formal probate. For the Legislature to have done otherwise would be illogical. As one judge has remarked:
To require a separate action to be filed. . . is the ultimate in judicial inefficiency. It makes about as much sense as having two benches in the courtroom, one to sit at when handling law and equity cases and another when handling a probate matter, or requiring different colored robes, black when sitting in law and equity, purple when sitting in probate.
In re Estate of Harrington, 648 P.2d 556, 567 (Wyo.1982) (Raper, J., dissenting).
{20} In our view, the Legislature's clear and express purpose for adopting the Uniform Probate Code would be frustrated if we gave Section 45-1-302 a narrower interpretation than we have here today. See NMSA 1978, § 45-1-102(A) (1975) (stating that the Probate Code is to be "liberally construed and applied to promote its underlying purposes and policies."); Miller v. New Mexico Dep't of Transp., 106 N.M. 253, 255, 741 P.2d 1374, 1376 (1987) ("Statutes are to be read in a way that facilitates their operation and the achievement of their goals.").

B. Harrington's Arguments

{21} Harrington claims that a decision upholding the general jurisdiction of district *1076 courts sitting in probate would contravene New Mexico case law, which unanimously upholds the rule that district courts sitting in probate lack general civil jurisdiction. See In re Estates of Salas, 105 N.M. 472, 474, 734 P.2d 250, 252 (Ct.App.1987). In In re Estates of Salas, this Court stated:
The district court sitting in probate and the probate courts are not invested with general civil jurisdiction. In re Porter's Estate, 47 N.M. 122, 138 P.2d 260 (1943); see also In re Conley's Will, 58 N.M. 771, 276 P.2d 906 (1954); N.M. Const. art. VI, § 23; NMSA 1978, § 45-1-302 (Cum. Supp.1986).
In re Estates of Salas, 105 N.M. at 474, 734 P.2d at 252.
{22} In our view, In re Estates of Salas misstates the jurisdiction conferred upon district courts over probate matters because it fails to distinguish between formal proceedings and informal proceedings. That distinction is of critical importance here.
{23} In addition, the cases upon which In re Estates of Salas relies for support are no longer good law. Both In re Porter's Estate and In re Conley's Will involved the question of whether a district court sitting in probate could determine title to real property. See In re Porter's Estate, 47 N.M. at 123-24, 138 P.2d at 261; In re Conley's Will, 58 N.M. at 773-774, 276 P.2d at 907. Relying on statutory provisions and case law limiting the jurisdiction of district courts to that enjoyed by probate courts, those cases answered the question presented in the negative because our Constitution expressly prohibits probate courts from proceeding "in any matter wherein the title or boundaries of land may be in dispute or drawn in question." N.M. Const., art. VI, § 23; see In re Porter's Estate, 47 N.M. at 123-24, 138 P.2d at 261; In re Conley's Will, 58 N.M. at 775-76, 276 P.2d at 907-08. However, ever since our Legislature adopted the Uniform Probate Code, district courts sitting in probate have not been compelled to exercise the same jurisdiction of the probate courts. In fact, by adopting the Uniform Probate Code, the Legislature conferred upon district courts exclusive original jurisdiction over formal probate proceedings, including exclusive jurisdiction over proceedings to determine the title to real property. See § 45-1-302(B). In light of the foregoing, we reject Harrington's argument.

III. FINAL ORDER
{24} The last issue we address is whether the trial court's order appointing a receiver to liquidate the business was a final order. An order is generally not considered final unless all issues of law and fact have been determined and the case is disposed of to the fullest extent possible. See Executive Sports Club, Inc. v. First Plaza Trust, 1998-NMSC-008, ¶ 5, 125 N.M. 78, 957 P.2d 63. Our case law makes it clear, however, that "finality" is to be given a practical, rather than a technical, construction. See Central-Southwest Dairy Coop. v. American Bank of Commerce, 78 N.M. 464, 466-67, 432 P.2d 820, 822-23 (1967). Thus, if an order practically disposes of the merits of the action, the order is deemed final even though further proceedings remain necessary to carry the order into effect. See Sacramento Valley Irrigation Co. v. Lee, 15 N.M. 567, 577, 113 P. 834, 838 (1910).
{25} In Sacramento Valley Irrigation Co., a creditor filed suit against a corporation that owed him money. See id. at 573, 113 P. at 837. The creditor asked the trial court to enjoin the corporation from exercising its corporate powers and to appoint a receiver to liquidate the corporation's assets so that the corporation could pay its outstanding debts. See id. The creditor claimed he was statutorily entitled to such relief because the corporation was insolvent and it was improbable that the corporation could resume operating in a short time. See 1905 N.M.Laws, ch. 79, §§ 72-73. The trial court agreed with the creditor and granted his request by decree. See Sacramento Valley Irrigation Co.., 15 N.M. at 578-79, 113 P. at 838. The corporation appealed the trial court's decree. See id. at 578, 113 P. at 838.
{26} On appeal, the creditor asked the Supreme Court to dismiss the corporation's case on the ground that the trial court's decree was not final. See id. at 578, 113 P. at 838. The creditor argued the decree was interlocutory because the trial court, after *1077 entering its decree, still had to sell the corporation's assets and then distribute the proceeds to the corporation's creditors. See id. at 577-78, 113 P. at 838. The Supreme Court rejected the creditor's argument, explaining:
The finding of insolvency, together with the finding that the corporation cannot resume its business within a short time ... is a final determination of such facts. It is upon such finding by the court that the [statutory] right to the injunction and receivership is predicated. No further action of the court is contemplated with respect thereto. Errors of the trial court, if any, in the granting of such injunction and the appointment of a receiver and in the findings necessarily precedent thereto can only be reviewed on appeal or writ of error.
See id. at 574, 113 P. at 836.
{27} In the case at bar, the trial court ordered the appointment of a liquidating receiver upon finding that the parties were deadlocked and unable to reach an agreement regarding the disposition of the business. Although the trial court failed to identify a statute supporting its authority to liquidate the business based on its findings, the trial court apparently relied on Section 53-16-16. According to Section 53-16-16:
A. The district courts may liquidate the assets and business of a corporation:
(1) in an action by a shareholder when it is established that:
(a) the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or
(b) the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent; or
(c) the shareholders are deadlocked in voting power, and have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors; or
(d) the corporate assets are being misapplied or wasted.
(Emphasis added.)
{28} In accordance with Sacramento Valley Irrigation Co., we conclude as a matter of law that the trial court's finding that the parties were deadlocked was a final determination on that factual issue. See id. at 574, 113 P. at 836. After the trial court made this jurisdictional finding, the trial court obtained the statutory authority under Section 53-16-16(A)(1)(c) to appoint a receiver to liquidate the business. The trial court exercised its authority and, upon doing so, we hold that its receivership order became a final, appealable order. See id. at 574-75, 113 P. at 836. The fact that the trial court retained control of the case in order to conduct a sale and then distribute the proceeds generated by that sale does not render its order non-final. See id. at 578, 113 P. at 838 ("Nothing remains to be done by the court except certain ministerial acts looking to the disposition and distribution of the assets of the corporation. Such being the case[,] we think that the decree [is]... subject to appeal or writ of error.").
{29} Harrington had to appeal the trial court's final order appointing the receiver within thirty days in order to perfect his appeal as of right. See Rule 12-201(A)(2) (The notice of appeal shall be filed "within thirty (30) days after the judgment or order appealed from is filed in the district court clerk's office."). Harrington failed to do so. As a result, we cannot address the question of whether the trial court's jurisdictional finding under Section 53-16-16(A)(1)(c) is supported by substantial evidence. This is true even though we addressed the question of whether the trial court had subject matter jurisdiction to liquidate the business, a question which we have likened to a Rule 1-060(B)(4)-type motion for the reasons stated above. See Rule 1-060(B)(4) (granting relief from a final judgment on the ground that the judgment is void for lack of subject matter jurisdiction; stating that a motion under this Rule does not affect the finality of a judgment); James, 94 N.M. at 294, 609 P.2d at 1250 (ruling that a party may appeal the denial of a Rule 1-060(B) motion, but the scope of appellate review is limited to the *1078 correctness of the denial of the motion, and not to the correctness of the underlying judgment).
{30} In crafting our holding, we acknowledge, but find it inconsequential for this appeal, that Sacramento Valley Irrigation Co. has been distinguished by Eagle Mining & Improvement Co. v. Lund, 15 N.M. 696, 113 P. 840 (1910). In Eagle Mining & Improvement Co., our Supreme Court addressed the issue of whether a trial court's decree appointing a receiver to conserve the assets of an insolvent corporation, but not enjoining the corporation's operations, constituted a final decree. See id. at 700, 113 P. at 841. The Supreme Court held that such an order is not final. See id. at 703, 113 P. at 842-43. In support of its holding, the Court relied on Pierce v. Old Dominion Copper Mining & Smelting Co., 67 N.J. Eq. 399, 58 A. 319 (Ch.1904), which stated:
The order appointing a receiver is not necessarily a part of the final decree. The final decree is the decree for an injunction, this most effective and fatal decree, which virtually destroys the corporation, like a judgment of ouster in a quo warranto case, and prevents the corporation from perpetrating fraud. . . . Considered by itself, the order appointing a receiver is properly to be classified among interlocutory orders.
Id. at 326. This passage suggests that a district court's receivership order cannot independently constitute a final order. As Pierce points out, however, the determination of whether a receivership decree constitutes a final order is largely dictated by the statute under which the plaintiff seeks relief. See id.
{31} In Pierce and Eagle Mining & Improvement Co., pursuant to the terms of the pertinent corporation statute, a statutory receiver could not "be appointed unless the statutory injunction, which is the object of the suit, [was] also ordered or ha[d] been already ordered." Pierce, 58 A. at 325; see Eagle Mining & Improvement Co., 15 N.M. at 702-03, 113 P. at 842. The district court's receivership decree in Eagle Mining & Improvement Co. was therefore deemed interlocutory because the decree really did not resolve anything. In the absence of the statutory injunction, the appointed receiver could do little more than conserve the assets of the insolvent corporation. See Eagle Mining & Improvement Co., 15 N.M. at 700, 113 P. at 842 ("The decree appointing such receiver is in the usual form of such decrees appointing receivers to conserve property pending final disposition of the case in chief under orders from the court."). The district court's decree, which merely maintained the status quo, was properly deemed non-final.
{32} In contrast, the trial court's decision to liquidate the business in its receivership order constituted drastic action. The trial court's order disrupted the status quo. It dictated the fate of the business. Once the order was entered, nothing remained to be done by the trial court but ministerial acts looking to the disposition and distribution of the assets. For the reasons stated above, the fact that the trial court retained control of the case in order to perform these ministerial acts fails to render the receivership order non-final.

CONCLUSION
{33} For the reasons stated, we affirm the trial court's exercise of jurisdiction and dismiss the appeal to the extent that it alleges errors committed pursuant to the exercise of that jurisdiction.
{34} IT IS SO ORDERED.
WECHSLER and ARMIJO, JJ., concur.