IN RE ESTATE OF RODNEY B. BRIONEZ, DECEASED.
MELISSA BRIONEZ, PERSONAL REPRESENTATIVE OF THE ESTATE
OF RODNEY B. BRIONEZ, DECEASED, APPELLANT, V. TINA LOUISE
GONZALES AND RODNEY B. ROULLIARD, APPELLEES.

603 N.W.2d 688

Filed January 4, 2000.    No. A-98-1304.

914

James M. Mathis, of Holtorf, Kovarik, Ellison & Mathis, P.C., for appellant.

Thomas T. Holyoke, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellee Tina Louise Gonzales.

HANNON and INBODY, Judges, and BUCKLEY, District Judge, Retired.

HANNON, Judge.

## INTRODUCTION

The personal representative of a father's intestate estate appeals the county court's determination that two other individuals were also children of the decedent and thus also heirs of the estate pursuant to Neb. Rev. Stat. § 30-2309(2) (Reissue

1995). Restated, the personal representative specifically alleges the county court erred in (1) allowing one of the parties to appear at trial and offer evidence of his relationship with the decedent without first filing a written objection and (2) finding clear and convincing evidence that both individuals were also children of the decedent. We hold (1) that the intestate statutes do not require an objector to file a written objection before testifying at trial and (2) that while the parties offered conflicting evidence, the facts accepted by the trial court were sufficient to establish a parent-child relationship with respect to both individuals by clear and convincing proof. Accordingly, we affirm.

## SUMMARY OF EVIDENCE

Rodney B. Brionez (decedent) died intestate on July 8, 1997. At the time of his death, he lived in Scotts Bluff County, Nebraska, and was not married. This case arises from a dispute over who are the decedent's children for purposes of determining his heirs. A few days after the decedent's death, Melissa Brionez, undisputed to be the decedent's daughter, petitioned for appointment as the personal representative of the decedent's estate. In her petition, Melissa listed herself and Tina Louise Gonzales as daughters of the decedent. At the same time, Tina filed a document abrogating her right to act as personal representative. Melissa was thereafter appointed as personal representative.

Approximately 3 months later, Melissa amended her application to show that she was the sole heir of the decedent and that Tina was not one of his daughters. Tina responded by filing a petition for a formal determination of heirs. In July 1998, Melissa filed a formal petition for complete settlement of the estate. Tina responded by filing an objection to that petition. Janet Bate, the mother of Casey Bate, also filed an objection, on behalf of Casey, to the petition for settlement, claiming that Casey was also a daughter of the decedent. The trial to determine the heirs for purposes of complete settlement occurred on November 10, 1998.

The parties vehemently disputed the evidence offered by the other parties; consequently, the evidence does not lend itself to

a cohesive summary for the purposes of this appeal. Therefore, we will describe the relevant testimony from the various witnesses.

Sally Brionez Dittmar, the decedent's aunt, testified for Tina and stated that she had always considered Tina and Melissa to be her nieces. Presumably, she meant "grandnieces." She specifically testified that Tina was the decedent's daughter, and while he and Tina had lost touch somewhat in recent years, they had been quite close during Tina's childhood. She also explained that the decedent had married his first wife, Irma, while the couple was in high school.

Raymond Brionez, the decedent's father, testified next for Tina. He testified that he had always considered Melissa and Tina as his granddaughters. He also testified that the decedent claimed Tina as his daughter.

The next witness was Margaret Gonzales, Tina's mother. She testified that she lived with the decedent in Denver for approximately 8 to 9 months before Tina's birth on August 18, 1966. She also testified that she lived with the decedent again for a short time in 1990. According to Margaret, the decedent was Tina's father, and his name appears as such on Tina's birth certificate.

Tina also took the stand on her own behalf. She identified her birth certificate, listing the decedent's first and last names, and she stated that the decedent was her father. Tina testified that the decedent was present when her two children were born and that she was present with most of the family when the decedent died. She also testified that the decedent lived with her for a time when she was 3 or 4 years old and that while she was growing up, she always considered Melissa her sister and that the two spent time together.

Jenny Brionez, the decedent's mother and Raymond's former wife, testified for Melissa. Jenny testified that she did not recall the decedent ever telling her he was Tina's father. She also stated that the decedent never lived with Tina's mother.

Melissa testified next and stated that she lived with the decedent from 1989 to 1991. She testified that Tina was not the decedent's daughter, despite what Melissa originally told John Selzer, the attorney for the estate's personal representative.

Melissa's mother, Gloria Brionez Rodriguez, also testified for Melissa. Gloria was married to the decedent and lived with him in Colorado. Gloria testified that the decedent denied paternity of Tina and that he had even hired an attorney in Colorado to assist him in denying an attempt by Margaret to collect support for Tina in 1977. Gloria also explained that Margaret and Irma were best friends in high school and that the decedent lived with Irma from 1961 to 1970, which included the time of Tina's birth.

Selzer testified that the decedent's cousin and his wife told him that the decedent accepted Tina as his daughter. He further testified that Melissa and Tina met with him together and told him that they had always considered themselves sisters.

Rodney B. Roulliard and his mother, Carol Bravo, were the last two witnesses to testify. There was evidence that the other litigants were aware that Rodney might appear at the trial, which he did, and upon his appearance, Rodney orally objected to Melissa's petition and claimed that the decedent was his father as well. Melissa objected to Rodney's appearance, asserting that he had not made a written objection before the trial and that his appearance this late in the proceedings would prejudice Melissa's ability to respond to his claim. The county court overruled Melissa's objection and allowed Rodney and Carol to testify.

Rodney testified that he was born on April 10, 1971, and that the decedent was his father. He also testified that he visited the decedent periodically throughout his life and that he attended the funeral after learning of the decedent's death. Carol testified that she lived with the decedent for approximately 3½ years, starting in approximately 1968. She explained that she named her son after the decedent with respect to his first and middle names—Rodney Blas.

Janet produced no evidence at trial to establish that Casey was a child of the decedent.

At the conclusion of the trial and after weighing the evidence presented, the county court held that three heirs to the decedent's estate existed—Melissa, Tina, and Rodney. Melissa now appeals.

## ASSIGNMENTS OF ERROR

Melissa alleges that the trial court erred in the following ways: (1) finding Tina was a child and heir of the decedent, (2) allowing Rodney to appear at trial and object without prior written notice, and (3) finding Rodney was a child and heir of the decedent.

## STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Foxley*, 254 Neb. 204, 575 N.W.2d 150 (1998). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.* When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Douglas Cty. Sch. Dist. 001 v. Dutcher*, 254 Neb. 317, 576 N.W.2d 469 (1998). When the evidence is in conflict in a proceeding under a clear and convincing standard, an appellate court may give weight to the circumstance that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Drew v. Walkup*, 240 Neb. 946, 486 N.W.2d 187 (1992).

## ANALYSIS

*Rodney's Oral Objection.*

We begin first with Melissa's argument that the county court improperly allowed Rodney to object orally and testify at the trial without first filing a written objection. While the Nebraska Probate Code specifically requires written notice and formal filings in several instances, we can find no provision that can be interpreted to require an objector in Rodney's position to file a written objection in order to present evidence that he is an heir of the decedent. Further, Melissa fails to cite or direct us to any such authority, statutory or otherwise.

"There is no common law right of inheritance. The right of inheritance is purely a creature of statute and must be determined not as a matter of sentiment but as a matter of law." *In re Estate of Luckey*, 206 Neb. 53, 57, 291 N.W.2d 235, 238 (1980).

The statutory structure of Nebraska's intestacy laws specifically provides Rodney with an avenue to establish his relationship with the decedent to claim as an heir. See § 30-2309. However, that structure does not impose a written notice requirement of any type upon Rodney, and we do not have the authority to create one.

Melissa argues that Rodney's "late" appearance in the trial prejudiced her ability to dispute his claim. However, we note that Melissa listed Rodney as an individual who might claim to be an heir in her formal petition for complete settlement of the estate filed on July 24, 1998. Selzer filed an affidavit on August 3, 1998, explaining that he sent notice of the proceedings to Rodney on that same day. Rodney was also listed as one of the individuals served with a copy of other documents filed after Melissa's petition to settle the estate. Further, Melissa never requested a continuance when Rodney asserted his claim at trial. On these facts, we cannot say that the county court committed error by overruling Melissa's objection regarding prejudice. The pleadings show that she was aware of Rodney's potential claim for at least 3½ months before the trial.

*Tina and Rodney as Heirs.*

Section 30-2309(2) governs the determination of children as heirs when an individual dies intestate. Section 30-2309 states in pertinent part:

> If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person,
>
> . . . .
>
> . . . a person born out of wedlock is a child of the mother. That person is also a child of the father, if:
>
> . . . .
>
> . . . the paternity is established by an adjudication before the death of the father or is established thereafter by strict, clear and convincing proof. The open cohabitation of the mother and alleged father during the period of conception shall be admissible as evidence of paternity.

"Clear and convincing evidence means and is that amount of evidence which produces in the trier of fact a firm

belief or conviction about the existence of a fact to be proved." *In re Interest of Joshua M. et al.*, 251 Neb. 614, 636, 558 N.W.2d 548, 563 (1997). To clarify the interaction between the burden of proof below and the standard of review on appeal, our responsibility in this case is to review the lower court's ruling to determine whether it comports with the law and whether the evidence accepted by the lower court was competent to create a firm belief or conviction in the conclusions made.

The evidence presented to the county court was clearly in dispute, and some facts contradicted other facts. Melissa essentially argues on appeal that the evidence presented at trial was insufficient to meet the statutory burden of proof due to all of the contradictions in the evidence, which she discusses at some length. For example, Melissa points out that the evidence at trial seems to indicate that the decedent lived with three different women—Irma, Margaret, and Carol—at approximately the same time in the late 1960's. Accordingly, Melissa argues that the county court based its findings on irreconcilable testimony which cannot meet the clear and convincing standard articulated in § 30-2309(2).

Melissa's argument appears to be premised on the idea that conflicting evidence cannot be clear and convincing because of the contradictions. This approach does not accurately reflect the law. In *Reid v. Flournoy*, 600 So. 2d 1024 (Ala. Civ. App. 1992), the Court of Civil Appeals of Alabama affirmed the lower court's holding that a claimant had not met her burden of proof under a statute almost identical to Nebraska's § 30-2309. *Reid* noted the factually intensive nature of the case and discussed the deference appropriately given to the lower court:

> Evidence was offered which, if believed, was necessary to prove Reid's case; however, the trial court heard and saw the witnesses and had the opportunity to judge their demeanor and credibility. Additionally, the evidence presented by Reid was disputed by evidence presented by the appellees; therefore, the record contains evidence supporting the contentions of both sides. In determining the weight to be accorded a witness's testimony, the trial court, as the sole judge of the credibility of a witness, considers the demeanor and the "apparent candor or

evasiveness" of the witness. . . . As such, the trial court may disbelieve and disregard portions of testimony and should accept only that testimony it considers worthy of belief.

(Citations omitted.) 600 So. 2d at 1026.

The Nebraska Supreme Court has articulated the same deference to factual determinations made under the clear and convincing standard in termination of parental rights cases. In *In re Interest of Wagner and Russell*, 209 Neb. 33, 37, 305 N.W.2d 900, 902 (1981), the Nebraska Supreme Court found that "[t]he evidence presented at the various hearings, if believed by the [trial] court, would permit it to find, by clear and convincing evidence, the following facts." The Supreme Court then summarized the facts which it believed supported the trial court's decision to sever the parents' rights to their children. The court stated:

While, to some extent, the [trial] court's findings [were] based upon somewhat conflicting evidence, we, on review de novo, take into consideration the fact that the trial judge observed the witnesses and is in a much better position than this court to draw conclusions concerning the capabilities and intentions of the parents.

*Id.* at 40, 305 N.W.2d at 904.

The county court in this case deserves a similar deference to that given to the trial court in *In re Interest of Wagner and Russell* and the same deference given to the lower court in *Reid, supra*. Contrary to what Melissa argues, evidence may be clear and convincing despite the fact that other evidence may contradict it. On appeal, we defer to the county court's assessment of the weight and credibility of the evidence because the county court has the advantage of hearing the witnesses and observing important factors of testimony not readily apparent in a cold record.

Under the standard of review as clarified above, we review whether the evidence accepted by the county court and used to support its conclusions was sufficient to meet the clear and convincing standard in § 30-2309. Like in *Reid, supra*, Melissa and the objectors each presented evidence which, if believed, supported their argument. The county court, as the trier of fact,

found the evidence presented by Tina and Rodney credible and ruled in their favor. Deferring to the county court's determination of which evidence was more credible, we believe its ruling conformed to law and was supported by competent evidence.

Several witnesses testified that Tina was the decedent's daughter and had been treated as such by the decedent and others. Evidence suggested that Melissa even agreed with this fact at least at some point in time. Further, Tina's birth certificate lists the decedent as her father, and evidence existed that she had a significant relationship with the decedent during her life. With respect to Rodney, he and Carol testified that he was the decedent's son. Rodney bears the same first and middle names as the decedent and kept in touch with the decedent throughout his lifetime. While Rodney's evidence was not voluminous, the other evidence offered does not appear to dispute his claim, beyond the alleged contradiction in dates. We cannot say that this evidence, as well as the other evidence and various factors observed by the county court at trial, could not create a firm belief in the court that Tina and Rodney were children of the decedent. With respect to the child support claim in Colorado, we believe the decedent's denial of paternity is naturally suspect and hardly controlling.

Melissa specifically points out that Tina's and Rodney's evidence contradict as to the time the decedent lived with their mothers. We again defer to the trial court's better-suited position to weigh credibility, but we do note that the record seems to show that many of the witnesses did not give specific dates, even years, with any high degree of certainty. In fact, several stated that they remained unsure about exact dates. Most of this conflicting evidence was proffered by the mothers of the parties while testifying favorably on their child's behalf. Even the dates that the decedent lived with Irma were uncertain—whether he lived with her until she died or whether he moved out when they separated. While some evidence contradicts other evidence, we do not find Melissa's argument compelling.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the county court.

AFFIRMED.