2002-NMCA-105

55 P.3d 997

Lois Ann Meadows WILSON and Jim Meadows, Plaintiffs–Appellees,

v.

Myrtle B. FRITSCHY and the Accounting and Consulting Group f/k/a Friesen, Fritschy, Fritschy & Overstreet, Defendants–Appellants.

No. 21,926.

Court of Appeals of New Mexico.

Aug. 20, 2002.

786

Thomas L. Johnson, George F. Koinis, Kerri L. Peck, Foster, Johnson, McDonald,

Lucero & Koinis, Albuquerque, NM, for Appellees.

John M. Brant, Charles K. Purcell, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, NM, for Appellants.

## OPINION

BOSSON, Chief Judge.

{1} On interlocutory appeal, we decide an issue previously left unsettled by this Court: whether we will recognize the tort of intentional interference with expected inheritance when probate proceedings are available to address the just distribution of disputed assets and can otherwise provide adequate relief. *See Doughty v. Morris*, 117 N.M. 284, 287, 871 P.2d 380, 383 (Ct.App.1994). We hold that the tort will not lie under those circumstances. The district court having denied Defendants' motion for summary judgment raising this same issue, we now reverse and remand for entry of summary judgment in Defendants' favor.

## BACKGROUND

{2} William Meadows (Meadows) died on December 29, 1997, at the age of ninety-two, while residing in Lakeview Christian Home (Lakeview), a nursing home in Carlsbad, New Mexico. Meadows' testamentary plan, executed in 1996, included a pour-over will which incorporated by reference a trust agreement that provided terms for the disposition of his estate. Meadows' 1996 testamentary plan replaced an earlier trust and pour-over will, executed in 1991.

{3} Meadows, a childless widower, was the oldest of four brothers. The 1991 revocable trust had placed Meadows' assets in trust, to be used for his sole benefit during his lifetime and, thereafter, to be distributed, in three equal shares, to his brothers, Charles and Royce, and to Lee Meadows, the son of his deceased brother, Ellis. The 1991 trust provided that if any of the named beneficiaries predeceased Meadows, their surviving issue would take by representation. Charles and Royce did, in fact, predecease Meadows by a few months. Plaintiff Lois Ann Meadows Wilson, Meadows' niece, is the sole descendant of Royce Meadows. Plaintiff Jim P. Meadows, Meadows' nephew, is the sole descendant of Charles Meadows. Under the terms of the 1991 trust, Plaintiffs would have taken Charles' and Royce's shares by representation, and each would have received one-third of Meadows' estate, which was valued at approximately $1,900,000 at the time of his death. However, Plaintiffs' expectations were dramatically altered with the execution of the 1996 testamentary plan.

{4} The 1996 trust agreement and pour-over will were prepared for Meadows by an Albuquerque attorney. Meadows appointed Carlsbad National Bank (Bank) as Trustee and personal representative of his estate. The 1996 trust agreement named the same three beneficiaries: Meadows' brothers, Charles and Royce, and Meadows' nephew, Lee Meadows. Lee Meadows, or his surviving issue by representation, remained a direct distributee under the 1996 trust. However, the new trust provided that Charles and Royce would only receive a life estate, after which their shares would be distributed to Lakeview, under the terms of a charitable remainder annuity trust, for the purposes of opening an Alzheimer's wing at Lakeview. In addition to reducing Meadows' estate tax liability, the terms of the 1996 trust also had the practical effect of disinheriting Plaintiffs, the descendants of Charles and Royce.

{5} After Meadows died, the Bank received a letter from counsel for Plaintiffs, advising them that Plaintiffs were challenging Meadows' revised testamentary plan and advising the Bank not to distribute the estate under the terms of the 1996 trust. In July 1998, the Bank filed an interpleader action in the district court, naming Plaintiffs, Lee Meadows, and Lakeview as defendants, and seeking to determine the proper distribution of the estate. Upon the Bank's request, an order of informal probate issued in May 1999. Shortly thereafter, Plaintiffs filed a notice of intent to file formal testacy proceedings to contest Meadows' revised testamentary plan. This notice acknowledged that Plaintiffs had until December 28, 2000, to commence a formal testacy proceeding, which by statute must begin within a year of the informal probate, or within three years of Meadows' death. *See* NMSA 1978, § 45–3–

108(A)(3) (1995). However, Plaintiffs never filed for a formal testacy proceeding.

{6} In July 1999, a settlement was reached in the interpleader action. Plaintiffs each received 18.7875 percent of the estate assets, less a portion of the legal and accounting fees incurred by the Bank. Lee Meadows received one-third of the estate and Lakeview received the balance. The terms of the interpleader settlement agreement expressly reserved Plaintiffs' right to bring separate claims against third-parties who were not beneficiaries of either testamentary plan. The district court, sitting in probate in the informal probate proceeding, approved the interpleader settlement agreement.

{7} In September 1999, Plaintiffs, who are residents of Texas, filed a lawsuit against Defendants in the United States District Court for the District of New Mexico, alleging diversity jurisdiction. *See Wilson v. Fritschy*, No. 99–984 BB/WWD (D.N.M. Sept. 1, 1999). Defendants were Myrtle Fritschy, Meadows' accountant for many years, and Fritschy's accounting and consulting group. Fritschy had advised Meadows about the estate tax consequences of the 1991 trust and suggested that he consider making charitable donations as a way of reducing the estate's potential tax liability. Fritschy also served as the auditor for Lakeview and acknowledges that she probably suggested Lakeview as an appropriate charitable beneficiary. Plaintiffs claimed that Fritschy and her firm had tortiously interfered with their prospective inheritance. Plaintiffs alleged that Meadows lacked the necessary testamentary capacity and was subject to Fritschy's undue influence when she persuaded him to execute the 1996 testamentary plan providing for a charity she favored. Upon Defendants' motion, Plaintiffs consented to a dismissal of the federal lawsuit without prejudice on the ground that the federal court lacked subject matter jurisdiction.

{8} Plaintiffs filed the present lawsuit on March 31, 2000, again alleging that Defendants tortiously interfered with their inheritance. Plaintiffs claim compensatory damages representing the difference between what they would have received under the 1991 trust and what they actually received

from the settlement. Plaintiffs also seek consequential and punitive damages. Plaintiffs argue for the first time on appeal that they should also be entitled to damages for emotional distress.

{9} Defendants moved unsuccessfully for summary judgment, arguing that the tort of intentional interference with expected inheritance did not apply in these circumstances. The district court denied the motion but certified the question for interlocutory appeal, which we granted.

## DISCUSSION

{10} The denial of Defendants' motion for summary judgment presents a question of law that this Court reviews de novo. *See, e.g., Bartlett v. Mirabal*, 2000–NMCA–036, ¶ 4, 128 N.M. 830, 999 P.2d 1062. We are asked in this appeal to clarify the scope of the tort of intentional interference with expected inheritance as that tort is recognized in New Mexico. In particular, we are asked to determine whether this tort applies to property transfers that can otherwise be addressed through probate proceedings.

{11} In 1994, this Court first acknowledged a viable cause of action against those who intentionally interfere with an expected inheritance. *See Doughty v. Morris*, 117 N.M. at 287, 871 P.2d at 383. In *Doughty*, the will beneficiary alleged that her brother had tortiously interfered with her inheritance by coercing their ailing mother to make certain inter vivos transfers of property, after which no property remained in their mother's estate to divide equally between her children as the will specified. *Id.* at 286, 871 P.2d at 382. Relying on the Restatement (Second) of Torts § 774B (1977), we recognized the following elements of the tort: (1) an expectancy; (2) a reasonable certainty that the expectancy would have been realized but for the interference; (3) intentional interference with the expectancy; (4) tortious conduct involved with the interference, such as fraud, duress, or undue influence; and (5) damages. *Id.* at 288, 871 P.2d at 384.

{12} In *Doughty*, we acknowledged that this "tort has frequently been invoked when defendant caused the decedent to transfer valuable property which would have gone to

plaintiff upon decedent's death." *Id.* (citing *Nemeth v. Banhalmi,* 99 Ill.App.3d 493, 55 Ill.Dec. 14, 425 N.E.2d 1187 (1981) and *Cyr v. Cote,* 396 A.2d 1013 (Me.1979)). Although we noted that this tort is often applied to inter vivos transfers of property that deplete an estate and cannot be challenged in probate, the facts in *Doughty* did not require us to determine whether this tort should also be recognized when the interference with inheritance takes place in the context of a will or other testamentary device that can be challenged in probate. We must now answer that question.

{13} In 1999, the United States Court of Appeals for the Tenth Circuit, interpreting *Doughty* and applying New Mexico law, addressed a similar claim for tortious interference with inheritance in which the perpetrators allegedly used undue influence to persuade the decedent to execute a new testamentary plan that was less favorable to the beneficiary of an earlier will. *Rienhardt v. Kelly,* 164 F.3d 1296, 1301 (10th Cir.1999). Interpreting *Doughty,* the court held as a matter of New Mexico law that the tort did not apply to property passing under the decedent's testamentary plan, because "[t]o do so would be to expand the tort in a manner inconsistent with the rationale for recognizing the tort in the first place." *Id.* The court distinguished a claim regarding property that passed subject to a testamentary device from the inter vivos transfers at issue in *Doughty,* in which the perpetrator "effectively circumvented the intent of the will without interfering with the will." *Id.* The court made the pivotal distinction that in *Doughty,* "[n]o challenge to this behavior could be brought in probate proceedings, because the will remained valid and executable according to its language. Thus, to remedy this seemingly remedy-less situation, the New Mexico court recognized the tort." *Id.* The Tenth Circuit concluded that the injured beneficiary in *Rienhardt* did not present the kind of claim contemplated in *Doughty.* *Id.* "Where the issue is properly within the jurisdiction of the probate court, the tort may not be used to circumvent the jurisdiction of that court." *Id.*

{14} Although a federal court's interpretation of state law is not binding on this Court, in this instance we think the Tenth Circuit got it right. We agree with the Tenth Circuit's reading of *Doughty* and its understanding of the tort of interference with inheritance as it develops in New Mexico. We apply similar limitations on the tort under the circumstances of this case and hold, as a general rule, that the tort does not obtain when an adequate remedy exists in probate.

{15} The federal court opinion in *Rienhardt* appears to be in line with the weight of the case law emerging from state appellate courts. Of those states that have considered the tort of intentional interference with inheritance, most have held that claims in tort may only be brought when there is no adequate remedy in probate. *See* James A. Fassold, *Tortious Interference with Expectancy of Inheritance: New Tort, New Traps,* 36 Ariz. Attorney 26, 28–29 (2000) (stating that, in most states where the tort is recognized, a deprived legatee must seek relief through probate or show that probate is impossible before bringing such a claim). *See id.* at 29 n. 24.

{16} For example, the Supreme Court of Arkansas recently refused to recognize the tort when an adequate remedy existed in probate. *Jackson v. Kelly,* 345 Ark. 151, 44 S.W.3d 328, 333 (2001). After failing in her attempt to have a will set aside, the disinherited plaintiff brought a tortious interference claim against the wife of the will beneficiary and also against the attorney who had prepared the offensive will. *Id.* at 328–30. The Arkansas court determined that the complainant's probate remedy was adequate, noting that if she had been successful in her will contest, complainant would have received her expectancy as an intestate heir. *Id.* at 332. Refusing to allow a "collateral attack" on the probate decree, the court noted that most appellate opinions on the subject have only allowed tort claims when probate relief would be unavailable or inadequate. *Id.* at 332–33; *see, e.g., Moore v. Graybeal,* 843 F.2d 706, 711 (3d Cir.1988); *DeWitt v. Duce,* 408 So.2d 216, 217, 220–21 (Fla.1981); *In re Estate of Knowlson,* 204 Ill.App.3d 454, 149 Ill.Dec. 813, 562 N.E.2d 277, 280 (1990); *Minton v.*

*Sackett,* 671 N.E.2d 160, 162 (Ind.Ct.App. 1996); *Graham v. Manche,* 974 S.W.2d 580, 583 (Mo.Ct.App.1998); *Firestone v. Galbreath,* 895 F.Supp. 917, 927 (So.D.Ohio 1995). *See generally* George L. Blum, *Action for Tortious Interference with Bequest as Precluded by Will Contest Remedy,* 18 A.L.R.5th 211 (1994).

{17} Similarly, the Supreme Court of Illinois rejected a post-probate tort claim because it constituted "a second bite of the apple." *Robinson v. First State Bank,* 97 Ill.2d 174, 73 Ill.Dec. 428, 454 N.E.2d 288, 294 (1983). The plaintiff heirs entered into a settlement agreement with the legatees of an earlier revoked will and the beneficiary of a later probated will. *Id.* at 289–90. Two years later, the heirs brought a tort claim for intentional interference with inheritance against the beneficiary of the probated will and added claims for concealment and breach of fiduciary duty against the bank that served as executor. *Id.* at 291–92. Notably, the disgruntled heirs in *Robinson* did not raise claims in tort that directly challenged the validity of the probated will. They did not seek damages against the estate itself and they sued a non-beneficiary who was not a party to the earlier probate proceeding. *Id.* at 292. Nonetheless, the Illinois court rejected the claims in tort, refusing to allow an action "which in its practical effect would invalidate a will that has become valid under the Probate Act." *Id.* at 294. The court relied on considerations of policy, dictating that probate is to "limit the time within which the validity of a will may be questioned and to create stability in the administration of estates." *Id.*

{18} We find these and similar appellate decisions persuasive. We agree that "[t]here is no common-law right of inheritance. The right of inheritance is purely a creature of statute." *In re Estate of Brionez,* 8 Neb.App. 913, 603 N.W.2d 688, 692–93 (2000) (internal quotation marks and citation omitted). Because there was "no right to contest a will at common law," the right exists solely by virtue of the New Mexico Probate Code. *C. de Baca v. Baca,* 73 N.M. 387, 390, 388 P.2d 392, 394 (1964). Accordingly, the Probate Code should not be "circumvented by calling a will contest an action in tort." *Dragan v. Miller,* 679 F.2d 712, 717 (7th Cir.1982) (Posner, J.).

{19} We feel compelled to protect the jurisdictional space carved out by our legislature when it enacted the Probate Code and created remedies, such as a will contest, designed exclusively for probate. We note that a will contest in probate requires a greater burden of persuasion than an independent action in tort. *See In re Estate of Gersbach,* 1998–NMSC–013, ¶ 9, 125 N.M. 269, 960 P.2d 811 (requiring that undue influence be proved by clear and convincing evidence). A presumption of due execution normally attaches to a testamentary instrument administrated in probate, but not necessarily in tort. *See In re Akin's Estate,* 41 N.M. 566, 570, 72 P.2d 21, 23–24 (1937) (discussing presumption of due execution); *In re Estate of Kelly,* 99 N.M. 482, 487, 660 P.2d 124, 129 (Ct.App.1983). If we were to permit, much less encourage, dual litigation tracks for disgruntled heirs, we would risk destabilizing the law of probate and creating uncertainty and inconsistency in its place. We would risk undermining the legislative intent inherent in creating the Probate Code as the preferable, if not exclusive, remedy for disputes over testamentary documents. *See* Fassold, *supra,* at 30–31 (asserting that "the tort can play havoc with traditional probate law[,]" and may result in "inconsistent judgments and a general assault on the concept of issue preclusion"); *see, e.g., McMullin v. Borgers,* 761 S.W.2d 718, 720 (Mo.Ct.App. 1988) (refusing to allow tort claim where the plaintiff did not pursue a will contest because permitting plaintiff to forego a proper remedy in probate, in order to seek more lucrative tort options, would "offend the goals of the [probate] action which seeks to implement the true intentions of the testator").

{20} Contrary to this emerging majority of case law, one state court recognized a claim for tortious interference with inheritance, even though a testamentary device had been previously challenged in probate. The Supreme Court of Iowa allowed successful will contestants to bring a subsequent action for intentional interference with inheritance, in an attempt to recover legal fees and other

consequential damages that were not addressed in the will contest. *See Peffer v. Bennett,* 523 F.2d 1323, 1326 (10th Cir.1975) (holding that a subsequent action by an heir to recover expenses was not precluded by a previous will contest in which a portion of the will was declared void because of undue influence). *Compare Huffey v. Lea,* 491 N.W.2d 518, 521 (Iowa 1992) (arguing that claims of undue influence turn on the testator's mental state and are distinct from tortious interference claims, which concern the wrongdoer's unlawful intent) *with id.* at 523–27 (McGiverin, C.J., dissenting in part) (arguing that an adequate remedy had already been provided to the plaintiffs in their will contest, and pointing out that the same facts and evidence may be used to prove both undue influence and tortious interference). We are not persuaded to join this minority position.

{21} As a matter of judicial economy and policy, as well as legislative intent, we are persuaded that disputes over the validity of a testamentary instrument should be resolved in probate, without the added burden of an independent lawsuit in tort. In the main, absent special circumstances, successful will contestants in probate will receive their full expectancy and the dispute will end there. *See, e.g., Huffey,* 491 N.W.2d at 524 (McGiverin, C.J., dissenting in part) (describing unusual circumstances where probate remedies may be inadequate). When a testamentary instrument is set aside for fraud, duress, or undue influence, successful contestants will normally receive what they anticipated from the prior testamentary or intestate disposition. Will contestants who are able to set aside an instrument in probate based on undue influence and receive their expectancy will have suffered little or no actual damage, at least not of a kind that would justify our encouraging a subsequent action in tort.

{22} On the other hand, when a will contest proves unsuccessful, the doctrine of issue preclusion will usually bar a subsequent action in tort. *See, e.g., Gerhardt v. Miller,* 532 S.W.2d 852, 855 (Mo.Ct.App.1975) (following a will contest based upon allegations of fraud, in which the court found for the defendants as the result of a consent judgment, plaintiffs were precluded from pursuing a subsequent

civil action); *Silva v. State,* 106 N.M. 472, 476, 745 P.2d 380, 384 (1987) ( [T]he doctrine of defensive collateral estoppel may be applied when a defendant seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost regardless of whether defendant was privy to the prior suit.). Either way, when the validity of a testamentary instrument can be addressed in probate, there will normally be no cause for a separate action in tort.

■ {23} This emerging majority rule provides a nice fit with the case at bar. Plaintiffs could have addressed their undue influence claims fully in probate. If they had been successful in setting aside the 1996 testamentary plan, Plaintiffs would have received their entire expectancy under the 1991 trust. In the interpleader action, Plaintiffs raised the issue of undue influence, as it related to Meadows' testamentary capacity and the validity of the 1996 testamentary plan. Plaintiffs acknowledge that "[t]he 'will contest' (i.e., Interpleader action) was resolved long before this case was commenced." The terms of the interpleader settlement were approved in probate, and a final order was entered in August 1999. The deadline for contesting the order of informal probate passed and the matter became final as of December 28, 2000. *See* § 45–3–108(A)(3) (stating that an order of informal probate is conclusive unless contested within the later of twelve months from the informal probate or three years from the decedent's death). "It is the policy of the law to give repose to litigated matters that have been properly concluded." *Gerhardt,* 532 S.W.2d at 855 (holding that, where fraud allegations were presented in will contest and where the plaintiffs received a residue of the estate and agreed to a consent judgment, there was a final adjudication).

{24} Rather than pursue the underlying action to judgment, however, the parties chose to settle, thus leaving unresolved the allegations of undue influence. We ask: should the fact of settlement, as opposed to adjudication, make us more inclined to recognize a separate action in tort? We are not persuaded of any overarching policy consideration why it should. The parties' choice of

settlement does not convince us that the available probate remedies were inadequate. Although not many cases involve the effects of settlement, and still fewer discuss their rationale, we have located three opinions in which courts have refused to allow post-probate claims when the parties settled. *See Firestone*, 895 F.Supp. at 929 (suggesting that the plaintiff's expectancy as a residual trust beneficiary was curtailed in part by his involvement in a settlement agreement); *Robinson*, 73 Ill.Dec. 428, 454 N.E.2d at 292 (refusing to allow post-probate action against wife of will beneficiary and non-beneficiary bank, when plaintiff heirs accepted a settlement agreement to not pursue a will contest); *Gerhardt*, 532 S.W.2d at 855 (refusing to allow disinherited persons, who chose to accept a settlement, from subsequently bringing claim against non-beneficiary realty and insurance companies). Significantly, we are unaware of any case holding the contrary: that settlement made probate remedies inadequate, thereby justifying post-probate proceedings in tort.

{25} We are mindful that there are sound policy reasons for encouraging parties to settle. However, when plaintiffs choose to accept a settlement that is less than they might have received if they had been successful in setting aside a testamentary device, the mere fact of a resulting shortfall does not render probate remedies inadequate. Adequacy should be based on opportunity, and Plaintiffs had every opportunity for full relief if they had stayed the course in contesting the 1996 testamentary plan. *See Jackson*, 44 S.W.3d at 332 (determining that probate remedies were adequate for disinherited heir because, had she been successful in her will contest, she would have taken as an intestate heir). We also note that Defendants, who were not made parties to the interpleader proceeding, had no voice in Plaintiffs' settlement, and yet it is precisely that settlement that quantified the amount of damages for which Plaintiffs now seek to make them responsible.

■ {26} Plaintiffs raise several additional issues in response to our earlier proposed summary disposition. They contend that the court's earlier approval of the interpleader settlement, including the express reservation of any claims against Defendants, defeats the argument that their present claim could be inconsistent with the interests of probate. We disagree. Although the district court may have recognized Plaintiffs' reservation of otherwise legally cognizable claims against non-parties, it did not go so far as to ratify Plaintiffs' third-party claims or indicate that they were necessarily consistent with the interests of probate. The court simply acknowledged the existence of the claims as not included within the scope of settlement.

■ {27} Plaintiffs also suggest, somewhat fleetingly, that because Meadows' 1996 trust was not "testamentary," it could not have been adequately addressed in probate. However, trusts related to estates are undeniably within the sweep of the Uniform Probate Code. NMSA 1978, § 45–1–301(A), (E) (1975); NMSA 1978, § 45–1–302(A) (1978). Meadows' 1996 will and trust represent a unified estate plan. Other courts have viewed similar estate plans as forming one coherent unit, when, as here, both documents are signed at the same time, the will incorporates the trust by reference, the trust is of a testamentary nature, and the same body of evidence is relevant to the validity of both documents. *See Sun Bank/Miami, N.A. v. Hogarth*, 536 So.2d 263, 268 (Fla.Dist.Ct.App. 1988); *Brandin v. Brandin*, 918 S.W.2d 835, 840 (Mo.Ct.App.1996).

■ {28} Plaintiffs also cite NMSA 1978, Section 45–3–107 (1975) for the proposition that their tortious interference claim is independent of their earlier claim in probate. That section of the Probate Code states that "each proceeding before the district court or probate court is independent of any other proceeding involving the same estate [and] ... no petition is defective because it fails to embrace all matters which might then be the subject of a final order." Section 45–3–107 has been interpreted by this Court to provide that "each petition in a probate file should ordinarily be considered as initiating an independent proceeding, so that an order disposing of the matters raised in the petition should be considered a final, appealable order." *In re Estate of Newalla*, 114 N.M. 290, 294, 837 P.2d 1373, 1377 (Ct.App.1992). For

example, the statute provides that "[a] proceeding for appointment of a personal representative is concluded by an order making or declining the appointment." Section 45–3–107. In our view, Plaintiffs read the statute far too broadly. It does not authorize an independent tort action.

{29} Additionally, Plaintiffs argue that when, as here, their claim involves a non-beneficiary, who was not a party to the prior interpleader or probate actions, the tort claim is distinct from an attack on the testamentary documents. We disagree. In *Moore v. Graybeal*, 843 F.2d at 710, the United States Court of Appeals for the Third Circuit held that the plaintiff's post-probate claim against a non-beneficiary bank was "seeking in substance to invalidate the will." The Third Circuit noted that it had "not overlooked the fact that the bank is not a beneficiary under the will so that a money judgment against it alone would not necessarily require upsetting the probate proceedings." *Id.* at 712. Nonetheless, this fact did not alter the court's conclusion rejecting the claim in tort, which the court characterized as a "collateral attack" on the probate proceedings. *Id.; see also Jackson*, 44 S.W.3d at 333 (refusing to recognize post-probate tort claim against non-beneficiary attorney); *Robinson*, 73 Ill.Dec. 428, 454 N.E.2d at 292 (refusing to allow post-probate claim against non-beneficiary bank); *Gerhardt*, 532 S.W.2d at 855 (refusing to allow post-probate action against non-beneficiary realty and insurance companies).

{30} Plaintiffs also argue that the absence of an independent tort may result in third-party, non-beneficiaries, like Defendants, evading accountability for their tortious actions. For example, if Plaintiffs had been successful in having the 1996 testamentary plan set aside, by way of a challenge in probate, they might have realized their full expectancies. However, Defendants, as alleged wrongdoers, would not have been held liable for their actions without a separate action in tort.

{31} Plaintiffs make a valid argument. Absent an independent action in tort, Defendants may well escape financial accountability for their alleged wrongs. How-

ever, we simply may have to tolerate that consequence as a cost of protecting the integrity of the probate process. The tort of intentional interference with inheritance did not arise out of a perceived need to punish alleged wrongdoers. The tort developed to protect valid testamentary expectancies and to provide a remedy when the probate process proved inadequate. *See generally* Alvin E. Evans, *Torts to Expectancies in Decedents' Estates*, 93 U. Pa. L.Rev. 187 (1944); Linda S. Stinehart, *Tortious Interference with Inheritance in Illinois*, 16 Loy. U. Chi. L. J.181, 185–92 (1984). The proper focus of the tort is on the just distribution of estate assets; when that can be achieved in probate, the need for the tort disappears.

{32} Plaintiffs also contend that the settlement agreement did not make them "whole economically and emotionally" because they did not receive attorney fees, punitive damages, and damages for emotional distress. Again, we are not persuaded. If, instead of settling, Plaintiffs had prevailed in challenging the 1996 instruments, they might have recovered attorney fees in that prior proceeding. *See, e.g., In re Estate of Gardner*, 114 N.M. 793, 804, 845 P.2d 1247, 1258 (Ct. App.1992) (stating that district courts "may award attorney fees when a successful will contest benefits the entire estate," and citing *Gregg v. Gardner*, 73 N.M. 347, 388 P.2d 68 (1963)); *In re Estate of Foster*, 102 N.M. 707, 714–15, 699 P.2d 638, 645–46 (Ct.App. 1985) (stating that heirs who successfully opposed probate of valid will, enabling themselves to share in intestate estate, were entitled to attorney fees under common-fund doctrine on theory that they had conferred benefit on the estate). Plaintiffs made a knowing decision not to pursue to its conclusion their challenge of Meadows' revised testamentary plan. Moreover, the existence of unrecoverable litigation costs would not, in itself, convince us that probate remedies are inadequate. *See Jackson*, 44 S.W.3d at 333 (stating that "the recovery of legal costs is not a valid expectation" and determining that the lack of such damages did not render the plaintiff's probate remedies inadequate); *N.M. Right to Choose/NARAL v. Johnson*, 1999–NMSC–028, ¶ 9, 127 N.M. 654, 986 P.2d

450 (describing the American rule, under which litigants are ordinarily responsible for their own attorney fees).

{33} Plaintiffs also argue that the lack of punitive damages in probate did not make them "whole." By definition, the purpose of punitive damages is not to award compensation. *See Sanchez v. Clayton*, 117 N.M. 761, 766, 877 P.2d 567, 572 (1994); *Madrid v. Marquez*, 2001–NMCA–087, ¶ 4, 131 N.M. 132, 33 P.3d 683. Other states adopting the tort of intentional interference with inheritance have "consistently rejected the notion that punitive damages are a valid expectation for the purposes of determining the adequacy of relief in a will contest." *Minton*, 671 N.E.2d at 163; *accord DeWitt*, 408 So.2d at 220 n. 11; *McMullin*, 761 S.W.2d at 720. We reject any suggestion that we should recognize this tort simply to allow an opportunity for punitive damages.

{34} Plaintiffs also seek damages for emotional distress, yet they cite no authority for the proposition that the lack of such damages renders the probate remedy inadequate. *See State v. Nysus*, 2001–NMCA–102, ¶ 30, 131 N.M. 338, 35 P.3d 993 (noting that when no authority is cited, we assume that no supporting authority exists). Furthermore, we note that Plaintiffs did not request damages for emotional distress below.

{35} We hold that a cause of action for tortious interference with an expected inheritance will not lie when probate proceedings are available to address the disposition of disputed assets and can otherwise provide adequate relief. As previously stated, we base our decision not to authorize the tort in this context on what we perceive to be the best choice among policy alternatives, as well as on our respect for legislative intent inherent in the Probate Code. We decide that when property passes subject to a testamentary instrument, it is preferable to conclude the dispute at one setting, which ordinarily will afford injured parties an opportunity for substantial relief. Although we acknowledge the argument for multi-tiered litigation, and its occasion for still more financial relief, we make a conscious choice for a more balanced approach that is more consistent with the overall scheme of the Probate Code. *See*

*Minton*, 671 N.E.2d at 162 (stating that a majority of states which have adopted the tort have achieved a balance between the competing goals of providing a remedy to injured parties and honoring the probate code by "prohibiting a tort action to be brought where the remedy of a will contest is available and would provide the injured party with adequate relief").

## CONCLUSION

{36} We reverse the order denying Defendants' motion for summary judgment and remand for entry of summary judgment in favor of Defendants.

{37} **IT IS SO ORDERED.**

I CONCUR: CELIA FOY CASTILLO, Judge. .

JONATHAN B. SUTIN, Judge (specially concurring).

SUTIN, Judge (specially concurring).

{38} I concur in the result, but because my analysis is a bit different than that of the majority I write separately. In order to fully comprehend the unique character of this case it is important to discuss the circumstances in some further detail.

## BACKGROUND

{39} The instruments in question are a revocable trust and a pour-over will referencing the trust. The parties sued in tort are not trust beneficiaries, heirs, or devisees with rights in or expectancies as to the assets in the trust and estate. Neither the trustee of the trust nor the personal representative of the estate is sued in tort. The decedent's, that is Meadows', accountant and accounting firm are sued.

{40} In July 1998 the Bank as trustee filed an interpleader action in the Eddy County, New Mexico, district court to settle the issue of the validity of Plaintiffs' allegations regarding the validity of the 1996 trust, thus invoking principles of equity in the adjudication of the issues.

{41} In March 1999 the Bank as named personal representative filed an informal probate in the same district court, seeking ap-

pointment as personal representative in an unsupervised administration to probate Meadows' 1996 will. In March and May 1999 the court entered orders that the will "is hereby informally probated," appointed the Bank as personal representative of Meadows' estate in an unsupervised administration, and stayed the probate proceeding pending the determination in the interpleader action of the validity of the 1996 trust. In May 1999 Plaintiffs filed a notice of intent to file a formal testacy proceeding to contest the 1996 will based on undue influence, depending on the outcome of the interpleader action.

{42} The July 1999 settlement agreement in the interpleader action settled all matters in controversy regarding the assets in the 1996 trust and Meadows' probate estate. In regard to Plaintiffs' claims against Fritschy, who was the decedent's accountant, and also against her firm, the agreement states: "Jim Meadows and Lois Ann Meadows Wilson hereby reserve, and do not release, any and all claims which they may have against Myrtle Fritschy and/or the accounting firm(s) with which she has been associated for matters in any way connected with William M. Meadows, his trusts or his estate." The agreement was signed by the Bank as trustee, Lakeview Christian Home, Plaintiffs, and Lee Meadows. The agreement mentions that the settlement is pursuant to NMSA 1978, § 45–3–1101 (1995), of the Probate Code, encompassing "all assets comprising the probate estate of [Meadows] and all assets held in trust by [the Bank] at [Meadows'] death." It further requires the parties to present the agreement to the court in the pending probate proceeding for approval pursuant to NMSA 1978, § 45–3–1102 (1995), of the Probate Code.

{43} Shortly after the settlement agreement was signed, the court in the interpleader action entered an order approving the settlement agreement and dismissing the action with prejudice. The court found that "[p]rior to the initiation of the Interpleader action, the legality and legal sufficiency of various trust and will documents executed by William M. Meadows, deceased, had been challenged." The court further found that "[t]he Settlement Agreement is fair and rea-

sonable, has been approved by all interested parties, and should be approved by this Court pursuant to Section[s] 45–3–1101 and 45–3–1102, NMSA 1978." In its order, the court stated that the action was filed by the Bank "to construe the trusts and wills at issue," to determine "the proper settlement and distribution of the estate," and "to fully, finally and fairly resolve, settle and distribute the Estate of William M. Meadows." All interested parties, including Plaintiffs, obviously thought the court in the interpleader action had jurisdiction of the subject matter of the action and had the authority to construe the trust and will and to adjudicate distribution of the trust and estate assets.

{44} In July 2001 the court in the informal probate proceeding approved the settlement agreement, which had been filed in that proceeding by the Bank as personal representative of Meadows' estate. The court found that Plaintiffs claimed in the interpleader action that the 1996 trust and will were invalid due to Fritschy's alleged undue influence, and determined that, pursuant to NMSA 1978, § 45–1–303(B) (1975), the court in the interpleader action "was the proper court to hear and decide all challenges to the validity of the 1996 [trust and will] and to approve the [settlement agreement]." The probate court's order was approved by the Bank as personal representative of Meadows' estate and by Plaintiffs.

{45} Thus, all interested parties settled all equitable and legal issues regarding the validity of the 1996 trust and will. The settlement was court-approved under Probate Code Sections 45–3–1101 and –1102 and approved through the procedure under Probate Code Section 45–1–303(B), despite the fact no formal probate was filed. All indications are that the lack of a formal probate and testacy proceeding was unnecessary in this case for the results obtained.

## DISCUSSION

{46} This case is unlike those cited in the majority opinion. True, the cases cited set out rules of general applicability, look with disfavor on parties who seek "two bites at the apple" or who agree in a probate proceeding to distribution of assets of the estate on the one hand, but later attack the validity

of the will in a tort action. Nevertheless, the cases are not sufficiently close factually to control the outcome in the present case. The unique character of this case gives Plaintiffs a strong basis for the pursuit of a tort remedy.

{47} In this case, the district court with its probate hand stayed the probate action pending adjudication with its equity hand of the validity of the trust and will. Plaintiffs then settled with *all* parties having expectancies from the 1991 trust and 1991 pour-over will or the 1996 trust and 1996 pour-over will, and with the trustee of the 1996 trust. In addition, the parties obtained the agreement of the personal representative under the 1996 pour-over will. All interested parties (*see* NMSA 1978, § 45–1–201(A)(23) (1995)) understood that Plaintiffs claimed the 1996 trust and will were invalid, and all understood that Plaintiffs were settling for less with the green light to pursue Fritschy for the remainder of Plaintiffs' expectancies. Plaintiffs did not litigate and lose on the issue of undue influence. The district court sitting as a probate court approved the parties' settlement at the request of the personal representative and with Plaintiffs' approval. While this may technically have been an adjudication that the will was valid under NMSA 1978, § 45–3–102 (1995), I doubt collateral estoppel would serve to bar the tort action here.

{48} After settlement and approval of the settlement by the court, the parties who had an expectancy or fiduciary role in regard to the administration of the trust and probate of the will no longer needed the protections of the Probate Code. By the time Plaintiffs sued Fritschy and her firm, all trust and estate assets were distributed or to be distributed pursuant to court approval and according to the desires and agreement of all interested parties. No harm, no foul.

{49} Further, it is the pre-death established and substantially funded revocable trust that was the primary issue. Under that 1996 trust, Meadows received trust funds during his lifetime, and at his death the trust was split into A and B trusts. Trust A was a charitable remainder annuity trust under which Plaintiffs' fathers (two of Meadows' brothers, each of whom predeceased him) were to receive funds during their lifetimes, and at their deaths the principal and income was to be distributed to Lakeview to build a facility for Alzheimer's residents. Trust B was a trust for Lee Meadows. Even were the availability of the tort limited to instances in which an inheritance expectancy is wrongfully defeated through an inter vivos trust, the trust at issue here, a revocable trust, funded while Meadows was alive, and also serving as the receptacle for Meadows' remaining assets at his death, is the primary instrument. Plaintiffs in fact argue that most of Meadows' assets were held in the 1996 trust "as the result of inter vivos transfers and a will contest would not have touched those nontestamentary assets."

{50} Moreover, it is important to note that when we adopted the tort of tortious interference with an expected inheritance in *Doughty*, 117 N.M. at 287, 871 P.2d at 383, we made no effort to limit its applicability. We said: "Today, we extend the line of New Mexico cases acknowledging tortious interference causes of action to include a cause of action against those who intentionally and tortiously interfere with an expected inheritance." *Id.* We cited the Restatement (Second) of Torts 774B (1979) stating that it:

embraces the cause of action for tortious interference with an inheritance and states, "[o]ne who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."

*Id.* at 287–88, 871 P.2d at 383–84 (alteration in original). We set out the following requirements for liability:

To recover for tortious interference with an expected inheritance, a plaintiff must prove the following elements: (1) the existence of an expectancy; (2) a reasonable certainty that the expectancy would have been realized, but for the interference; (3) intentional interference with that expectancy; (4) tortious conduct involved with in-

terference, such as fraud, duress, or undue influence; and (5) damages.

*Id.* at 288, 871 P.2d at 384. On its face, *Doughty* could be read to permit Plaintiffs' tort action.

{51} Thus, in the present case, all interested parties, including Plaintiffs, and, as well, the district court entertaining both proceedings, clearly understood and agreed that the issue of undue influence was probate related, and that settlement of the issue was submitted for probate court approval under the Probate Code. All interested parties, including Plaintiffs, as well as the court sitting in equity and in probate, understood that the issue could have been litigated but chose instead to settle the issue, agree on the distribution of all assets, and then allow Plaintiffs to pursue Fritschy, a third party who was not an interested party. The Probate Code was hardly circumvented. All of the foregoing circumstances fairly open the gate to Plaintiffs' arguable position that they should be permitted to assert a claim against Fritschy for tortious interference of their expectancies. I would be prone to agree, were it not for other circumstances and a choice of a better policy to enforce, which I now discuss.

{52} The trust and estate assets were finite and undistributed at Meadows' death. Plaintiffs had an unfettered opportunity to pursue their full 1991 trust and inheritance expectancies in the interpleader action or in a probate testacy proceeding or in both actions consolidated to set aside the 1996 trust and will. There exists no reason why resolution of the question of the validity of the revocable trust and the will in two related actions, one in equity and one in probate, is not acceptable. *See Geduldig v. Posner,* 129 Md.App. 490, 743 A.2d 247, 255–57 (Ct. Spec.App.1999) (recognizing an equity action attacking the distribution of trust assets and a "caveat proceeding" attacking a will). The *Geduldig* court stated:

> [W]e conclude that the Court of Appeals would recognize the tort if it were necessary to afford complete, but traditional, relief. In the case before us, no reason is given as to why recognition of the tort is necessary other than that damages are

sought which are not otherwise available, specifically, damages for emotional distress, harm to reputation, and punitive damages. We decline to recognize the tort where the sole reason is an expansion of traditional remedies, as opposed to a situation, not before us, where the traditional remedy might be insufficient to correct the pecuniary loss.

*Id.* at 257.

{53} Plaintiffs could also have obtained relief just within a probate proceeding. They had standing to petition the district court for relief in a formal probate proceeding within the court's jurisdiction. *See* § 45–1–201(A)(23); NMSA 1978, §§ 45–3–105, –401 (1975). The Probate Code applies to, and the district court has jurisdiction over all subject matter relating to, trusts subject to administration in New Mexico. *See* §§ 45–1–301(E), –302(A)(4). A purpose of the Probate Code is "to facilitate use and enforcement of certain trusts." NMSA 1978, § 45–1–102(B)(4) (1975). "The principles of law and equity supplement the Probate Code's ... provisions." NMSA 1978, § 45–1–103 (1975). The district court has "full power to make orders, judgments and decrees to take all other action necessary and proper to administer justice in matters which come before it." Section 45–1–302(B).

{54} Moreover, district courts sitting in probate have general civil jurisdiction in formal probate proceedings. *In re Estate of Harrington,* 2000–NMCA–058, ¶ 17, 129 N.M. 266, 5 P.3d 1070. Further, the Probate Code states that "[a] will may validly devise property to the trustee of a trust established ... during the testator's lifetime by the testator." Section 45–2–511(A)(1). In addition,

> Unless the testator's will provides otherwise, property devised to a trust ... is not held under a testamentary trust of the testator, but it becomes a part of the trust to which it is devised and must be administered and disposed of in accordance with the provisions of the governing instrument setting forth the terms of the trust, including any amendments thereto made before or after the testator's death.

Section 45–2–511(B). The Probate Code provided adequate shelter for Plaintiffs' claims.

**798**

*See also Staples v. King,* 433 A.2d 407, 410–12 (Me.1981) (holding the probate court, which was granted jurisdiction in equity, had the power to void a completed inter vivos trust and impose a constructive trust); *Sun Bank/Miami, N.A. v. Hogarth,* 536 So.2d 263, 268 (Fla.Dist.Ct.App.1988) (stating that a "pour-over trust" for the residuary of an estate was an integral part of the will that referred to it, and that "[b]oth the will and the ... trust agreement must be read together to give effect to [the decedent's] testamentary plan," and holding that the probate court had jurisdiction to determine the validity of the trust); *Davison v. Feuerherd,* 391 So.2d 799, 802 (Fla.Dist.Ct.App.1980) ("[N]o real distinction exists between gifts of inheritance through a will and gifts through a revocable trust.").

{55} Plaintiffs agreed in the probate court-approved interpleader action to receive only a portion of their expectancies from the trust and estate assets. Plaintiffs released in the settlement agreement their claim as to all trust and estate assets not received in the settlement. Plaintiffs permitted the remainder of their expectancies to be distributed to Lakeview. And Plaintiffs released their claim that the 1996 trust and will were invalid due to undue influence. Thus, not only were the trust and estate assets completely distributed, Plaintiffs' inheritance "expectancies" and the expectancies of the 1996 trust and will beneficiaries and devisees were fully and finally settled. What existed, if anything, after Plaintiffs' choice of accepting less than their full expectancies and leaving what they gave up to be distributed to Lakeview, was, in essence, the following claim: Because of the tortious conduct of Fritschy, Plaintiffs were placed in a position of having to decide whether to settle for a portion of their expectancies rather than take the risk of losing it all (due to the uncertainty of litigation) and, therefore, Fritschy should have to compensate Plaintiffs for what they had to leave on the table when faced with a settlement option.

{56} Resolution of the issue is purely policy driven: In this revocable trust with pour-over will circumstance, where the validity of the trust and will is challenged, should inheritance expectancies be exclusively determined in a probate or related equity proceeding? In line with the opinion of my learned colleagues, as a matter of policy gleaned from the Legislature's enactment of the Probate Code and from traditional equity jurisprudence, *see Geduldig,* 743 A.2d at 256–57 ("Traditionally, claims attacking the distribution of estate and trust assets based on undue influence and fraud were equitable actions."), all focused on settlement of claims involving trusts and estates in a testamentary setting, I agree the better avenue to take is that of denying Plaintiffs the availability of the tort of interference with an inheritance expectancy.

{57} Despite the reasonably strong policy considerations [1] here in favor of permitting the tort action to proceed, I view the better policy to forbid it. Where the assets comprising an heir's or devisee's expectancies remain, as here, undistributed, to be distributed at or after death, and therefore available and reachable by the victim of an unlawful interference with an inheritance expectancy, the issues of the validity of a revocable trust and pour-over will and the proper distribution of the assets should be addressed together and exclusively under equitable principles and with the application of the procedures, burdens of proof, and protections of the Probate Code. To the extent that action does not simultaneously permit a claim against the tortfeasor for consequential and/or punitive damages, perhaps legislation to permit such damages would be appropriate.

{58} In order to persuade us that their tort action should be permitted, Plaintiffs had to show that the interpleader action and the probate proceeding could not have provided a full and adequate remedy with respect to the trust assets and residual assets in the estate to be transferred to the trust. They failed to do so. I agree with the majority and other jurisdictions holding that the

---

**1.** The policy considerations are that tort victims should be compensated and intentional tortfeasors should not go free, that settlements are favored, and that the purposes for and protections afforded by the Probate Code were not circumvented here.

unavailability of consequential and punitive damages in a probate proceeding does not render the remedy available in probate inadequate. *See, e.g., Jackson,* 44 S.W.3d at 333 (Ark.2001) (holding neither punitive damages nor legal costs to be a valid expectation); *Minton,* 671 N.E.2d at 163 (holding punitive damages not included in amount claimant can expect to receive); *but see Peffer,* 523 F.2d at 1324, 1326 (affirming award of reasonable expenses, including attorney fees); *Huffey,* 491 N.W.2d at 521 (permitting consequential and punitive damages where not provided upon mere setting aside of will).

{59} In conclusion, I agree to affirm because Plaintiffs had a full opportunity to recover their expectancies in proceedings geared to provide that remedy using principles of equity and in conformity with the Probate Code. *See Brandin,* 918 S.W.2d at 840 (holding that an action in equity to set aside a trust, with a will contest, would have given the plaintiffs an adequate remedy, because, if successful, the plaintiffs could have recovered their expectancies; therefore, plaintiffs could not sue in tort). As a matter of policy, the availability of the tort of intentional interference with an inheritance expectancy should be reserved for circumstances in which traditional equity and probate-related claims and their accompanying remedies for loss of an inheritance expectancy are unavailable or inadequate.