[No. D055668. Fourth Dist., Div. One. June 10, 2010.]

JAMES MUNN, Plaintiff and Appellant, v.
MICHAEL D. BRIGGS et al., Defendants and Respondents.

## COUNSEL

Luce, Forward, Hamilton & Scripps, Charles A. Bird, John T. Rogers, Jr., and Mary F. Gillick for Plaintiff and Appellant.

Wingert, Grebing, Brubaker & Goodwin, James J. Brown, Gina D. Stein; Law Offices of John S. Addams and John S. Addams for Defendants and Respondents.

## OPINION

**BENKE, Acting P. J.**—This appeal follows the successful demurrer of Carlyn Munn Briggs (Carlyn) and Michael D. Briggs (Michael) to the petition of Carlyn's brother James Munn (James) for relief from interference with an inheritance expectancy, a tort that has never been recognized in California. James alleges his sister and brother-in-law interfered with his expected inheritance by unduly influencing their mother Janell Munn (Janell) to sign a codicil to her will that gave $1 million each to Jana Munn Briggs (Jana) and Jack Munn Briggs (Jack), Janell's grandchildren and the children of Carlyn and Michael. Janell, however, did not make any gift of her estate to James's children.

James did not challenge the validity of the will and codicil admitted to probate because the codicil contained a no contest clause. That clause specified that if James unsuccessfully contested the validity of the codicil, everything left in the survivor's trust created by Janell after the death of her husband Henry Lusk Munn (Henry) would pass to Carlyn.

James instead filed a petition in the probate court against Carlyn and Michael alleging they tortiously interfered with his inheritance expectancy (petition for tortious interference with inheritance) when they "procured the execution [of the codicil] by exerting undue influence on Janell." The probate

court sustained without leave to amend the demurrer of Carlyn and Michael to the interference petition.

As we explain, we conclude James had an adequate remedy in probate to assert his fraud/undue influence claim against Carlyn and Michael. As such, under the present circumstances we decline to recognize a cause of action in tort for interference with an expected inheritance. Judgment affirmed.

## FACTS AND PROCEDURAL BACKGROUND

The relevant facts are not in dispute. In 1983, Henry and Janell created the Munn Family Trust (the trust). Henry and Janell had two children, James and Carlyn. Henry died in December 2006.

On Henry's death, the trust created three separate trusts, including a "survivor's trust" for the benefit of Janell. As the surviving spouse, the trust provided Janell with a testamentary power of appointment over the property in the survivor's trust.

Janell also executed a will in 1983. After allocating personal items (e.g., jewelry, clothing, furniture and automobiles) and making provision for the payment of taxes, the will gave the residue of Janell's estate to the trust. Janell also nominated Henry as her executor. If Henry was unable to act as executor, the will designated James, Carlyn and Michael (her son-in-law), or the survivor of them, as executor.

At the heart of the instant dispute between James and Carlyn is a codicil that Janell executed on December 22, 2007. Article II of the codicil provides: "Under my power of appointment in the [trust], I give one million dollars to my granddaughter Jana Munn Briggs and one million dollars to my grandson Jack Munn Briggs. The funds shall be given in trust as provided in Article Seventh c(9) of the [trust] to Jana or Jack if she or he, respectively, is under the age of thirty-one years at the time of my death."

Article III of the codicil states: "I [(Janell)] choose not to make a gift to my other grandchildren under my power of appointment because they have been much closer to their maternal grandparents, who have or can make gifts to them if they choose."

Article IV is the no contest clause. It provides: "If my son James . . . or any of his issue, singly or in conjunction with any other person or persons, contests in any court the validity of this codicil or my will or of any trust receiving property under this codicil, or shall seek to obtain an adjudication in any proceeding in any court that this codicil or any of its dispositive

provisions are void, or otherwise seeks to void, nullify, or set aside any of the provisions of this codicil, then under my power of appointment in the [trust], I give all remaining funds in the [trust] . . . to my daughter, Carlyn . . . (or her children if she predecease me)."

The codicil was witnessed by Lynne Thompson and Sylvia So, who declared under penalty of perjury Janell signed the codicil in their presence, Janell was of "sound mind" and Janell was "under no constraint or undue influence" when she executed the codicil. Janell passed away on January 23, 2008.

On February 14, 2008, Michael filed a petition in the San Diego County Superior Court seeking admission of the will and codicil to probate (the probate petition). As noted *ante*, James did not object to the validity of the will or codicil, or challenge the $1 million gifts to Jana and Jack. James instead filed his petition for tortious interference with inheritance against Carlyn and Michael.[1]

In that petition, James alleged that beginning in 2005 Janell and Henry lived in an assisted living facility, they both suffered from physical and mental difficulties and their conditions worsened over time. He further alleged in 2005 Janell's short-term memory "ranged from fair to poor," she could not walk without assistance and after Henry died in December 2006, her "mental alertness and memory became progressively worse and deteriorated at an ever-increasing rate . . . ."

James alleged Janell was "almost entirely reliant" on Carlyn and Michael in connection with her "personal and mental affairs," was allowed to exercise "virtually no discretion" in such matters, and Carlyn "engaged in behavior that was manipulative and mentally and emotionally abusive towards Janell." Specifically, he alleged Carlyn kept Janell's grandchildren from visiting Janell when Carlyn was upset with Janell, and Carlyn told Janell that if she did not behave better, Carlyn would not scatter her ashes alongside those of her husband Henry.

---

[1] Carlyn and Michael filed an unopposed request for judicial notice. Accordingly, we take judicial notice of the following four exhibits attached to the request: (A) the transcript of proceedings in the hearing on the demurrer to the petition for tortious interference with inheritance; (B) petition for declaration that proposed petition for tortious interference with inheritance does not constitute a contest of codicil; (C) response to objection to petition for declaration; and (D) notice of ruling. As these exhibits demonstrate, before James filed his petition for tortious interference with inheritance he filed a "safe harbor" petition under Probate Code *former* section 21320, subdivision (a), (discussed *post*). The probate court found James's proposed petition for tortious interference with inheritance did not come within Janell's no contest clause because James's proposed petition did not contest the validity of the codicil.

James also alleged Michael prepared the codicil with the no contest clause a month before Janell passed away and Carlyn and Michael misled Janell to believe that James's children had a "closer relationship" with their maternal grandparents " 'who have or can make gifts to them if they choose,' a statement that is completely unfounded and untrue."

As a result of such wrongful conduct, James alleged Carlyn and Michael intentionally interfered with his inheritance expectancy. Before the codicil, James had an expectancy to share equally with his sister Carlyn in the balance of the survivor's trust, each having a one-half interest. However, after the codicil, the balance of the survivor's trust was reduced by $2 million, causing James's expected inheritance to decrease by $1 million. Because the codicil included a no contest clause, James alleged he was prevented from receiving from Janell a substantial inheritance he otherwise would have received but for the interference of Carlyn and Michael. James sought in his interference petition compensatory and punitive damages against Carlyn and Michael.

Carlyn and Michael demurred. The probate court sustained the demurrer without leave to amend. In so doing, the court ruled "no California case has ever expressly held that the cause of action of Intentional Interference with an Inheritance Expectancy is recognized in California" and "the determination of whether California law should recognize [such a] cause of action . . . is not one that should be made by the trial court, especially given the policy of judicial economy, as well as the impact on the parties in funding litigation over a claim that may ultimately not be recognized as viable under California law." Judgment sustaining the demurrer to the interference petition was entered in September 2009.

## DISCUSSION

### A. *Standard of Review*

As relevant here, a demurrer is properly sustained when the complaint "does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) "On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. [Citation.] First, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. Next, we treat the demurrer as admitting all material facts properly pleaded. Then we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] [¶] We do not, however, assume the truth of contentions, deductions, or conclusions of law. [Citation.] If a complaint is insufficient on

any ground specified in a demurrer, the order sustaining the demurrer must be upheld even though the particular ground upon which the court sustained it may be untenable. [Citation.]" (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439–440 [88 Cal.Rptr.3d 330].) "And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable probability any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

## B. *Tortious Interference with Inheritance Expectancy*

### 1. *Background of the Tort*

█ The parties agree, and our own research confirms, that California has yet to recognize the tort of intentional interference with an inheritance expectancy as defined in the Restatement Second of Torts (Restatement), section 774B.

Section 774B of the Restatement was first published in 1979. (Rest.2d Torts, § 774B; see also Klein, *The Disappointed Heir's Revenge, Southern Style: Tortious Interference with Expectation of Inheritance—A Survey with Analysis of State Approaches in the Fifth and Eleventh Circuits* (2003) 55 Baylor L.Rev. 79, 84 (hereinafter *Survey with Analysis in the Fifth and Eleventh Circuits*).) Section 774B provides: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."

The Restatement notes section 774B is an "extension to a type of noncontractual relation of the principle found in the liability for intentional interference with prospective contracts . . . ." (Rest.2d Torts, § 774B, com. a, p. 58.) The Restatement further notes liability under section 774B is "limited to cases in which the actor has interfered with the inheritance or gift by means that are independently tortious in character," including when a third person has been induced to make or not make a "bequest or gift by fraud, duress, defamation or tortious abuse of fiduciary duty," or when a will or document making a gift has been "forged, altered or suppressed." (Rest.2d Torts, § 774B, com. c, pp. 58–59.)

"Tortious interference with expectation of inheritance is a comparatively new tort that has found [acceptance] in half of the United States." (Klein, *River Deep, Mountain High, Heir Disappointed: Tortious Interference with Expectation of Inheritance—A Survey with Analysis of State Approaches in the Mountain States* (2008) 45 Idaho L.Rev. 1, 2 (hereafter *Survey with Analysis*

*in the Mountain States)*[2]; see also Johnson, *Tortious Interference with Expectancy of Inheritance or Gift—Suggestions for Resort to the Tort* (2008) 39 U.Tol. L.Rev. 769, 774 (hereafter *Suggestions for Resort to the Tort*) ["While not all jurisdictions recognize a cause of action for tortious interference with expectancy of inheritance or gift, about half of all jurisdictions permit actions based on the tort."].)

■ "Under American law, testators have a right to completely disinherit nearly anyone, and there is no right to inherit. Of course, tortious conduct relating to wills, such as the use of undue influence, threats, or coercion to procure a particular disposition, or destruction of a will, has long been understood as a legal wrong, but only against the testator whose right of free testation is infringed upon, not the beneficiary. A purported injury to an intended *recipient* is not cognizable (because there is no right to inherit); instead, the probate system through the will contest . . . proceeding aims to offer all interested parties a forum in which to litigate the testator's true intentions." (*Survey with Analysis in the Fifth and Eleventh Circuits, supra,* 55 Baylor L.Rev. at pp. 87–88, fns. omitted.)

Unlike probate proceedings, which seek to carry out the intent of the testator with respect to the distribution of the testator's estate, a tort action for interference with an expected inheritance endeavors "to restore the plaintiff with the benefit arguably lost because of defendant's tortious conduct." (*Suggestions for Resort to the Tort, supra,* 39 U.Tol. L.Rev. at p. 772, fn. omitted; see also *Survey with Analysis in the Fifth and Eleventh Circuits, supra,* 55 Baylor L.Rev. at p. 88 [noting that "although an injury to the testator is a natural concomitant to the tort (for example, undue influence may be exerted on him to execute or revoke a will), the tort is not a testator-centered remedy," and noting that "the tort represents a fundamental and significant shift of focus away from the testator and onto the wronged would-be beneficiary"].)

"A successful tort action results in a judgment against the defendant for money damages, not a determination of the validity of a particular will or other testamentary result." (*Suggestions for Resort to the Tort, supra,* 39 U.Tol. L.Rev. at p. 772, fn. omitted.) "The legal differences between a will contest and the tort are far-reaching. The tort, an action at law, allows compensatory and punitive damages." (*Survey with Analysis in the Fifth and Eleventh Circuits, supra,* 55 Baylor L.Rev. at p. 89, fn. omitted.)

---

[2] Diane Klein has written extensively on this tort. Other articles authored by her include: Klein, *A Disappointed Yankee in Connecticut (or Nearby) Probate Court: Tortious Interference with Expectation of Inheritance—A Survey with Analysis of State Approaches in the First, Second, and Third Circuits* (Winter 2004) 66 U.Pitt. L.Rev. 235; and Klein, *Revenge of the Disappointed Heir: Tortious Interference with Expectation of Inheritance—A Survey with Analysis of State Approaches in the Fourth Circuit* (Winter 2002) 104 W.Va. L.Rev. 259.

"[I]n addition to the differing focus of the proceedings and the testator's intent versus the plaintiff's injury[,] [i]n a tort action . . . the plaintiff . . . files an in personam action against the alleged tortfeasor. In probate, even in a will contest involving proponents and opponents of a particular testamentary plan, the proceeding to determine the proper distribution of the testator's probate property is in rem. A tort action can result in a judgment against the defendant, as the alleged tortfeasor, to be paid from his personal assets. A probate proceeding determines what will happen to the assets in the testator's probate estate." (*Suggestions for Resort to the Tort, supra*, 39 U.Tol. L.Rev. at p. 772, fns. omitted; see also *Stevens v. Torregano* (1961) 192 Cal.App.2d 105, 114 [13 Cal.Rptr. 604] [probate decrees are in rem, binding on all interested persons].)

2. *Availability of the Tort and Adequacy of a Remedy in Probate*

■ "In terms of the availability of the tort, the cases seem to fall into three categories. First, there are those cases in which probate provides an adequate remedy and the party claiming injury has no need for the tort. Any action would proceed in the probate court. Second, there are those cases in which probate would provide an inadequate remedy or no remedy. Such cases should proceed in tort without resort to probate. Third, there are those cases in which a probate proceeding is held, and the result does not provide complete relief (or any relief) to the person alleging deprivation of an expectancy by tortious interference. . . . In this third category of cases . . . , the issue often becomes whether a tort action would be barred as a collateral attack on the probate court determination. The collateral attack doctrine could potentially bar the action because the person claiming tortious interference did not seek appropriate remedy in probate." (*Suggestions for Resort to the Tort, supra*, 39 U.Tol. L.Rev. at pp. 775–776, fns. omitted.)

Our independent research also confirms that when a party has an adequate remedy in probate, the party generally will be precluded from recovering in tort for interference with an expectancy. (See *Wilson v. Fritschy* (2002) 2002 NMCA 105 [132 N.M. 785, 55 P.3d 997, 1003] (*Wilson*) [analyzed *post*]; *Minton v. Sackett* (Ind.Ct.App. 1996) 671 N.E.2d 160, 162 [noting "[i]n determining whether to adopt the approach of [section 774B of] the Restatement, we must balance the competing goals of providing a remedy to injured parties and honoring the strictures of our probate code, which provides that a will contest is the exclusive means of challenging the validity of a will," and further noting "[a] majority of the states which have adopted the tort of interference with an inheritance have achieved such a balance by prohibiting a tort action to be brought where the remedy of a will contest is available and would provide the injured party with adequate relief"].)

The rule precluding a party from moving in tort when probate provides an adequate remedy applies even in those states that have recognized the tort. (See *Survey with Analysis in the Mountain States, supra*, 45 Idaho L.Rev. at p. 14, citing *Wilson, supra*, 55 P.2d at p. 1003; see also *Survey with Analysis in the Fifth and Eleventh Circuits, supra*, 55 Baylor L.Rev. at p. 95 ["Most states that recognize the tort see it as a secondary or back-up remedy, only to be used when, for whatever reason, the probate court remedy would be inadequate."]; Fried, *The Disappointed Heir: Going Beyond the Probate Process to Remedy Wrongdoing or Rectify Mistake* (2004) 39 Real Prop. Prob. & Tr. J. 357, 371, fn. omitted ["A court faced with a lawsuit brought by a disappointed heir for damages or the imposition of a constructive trust should determine initially whether the matter is one within the province of a probate court," and "[i]f the claimed wrongdoing relates to the execution or revocation of a will, and the claimant has standing in the probate proceeding, the court should not entertain an independent action even if the jurisdiction recognizes the tort of interference with an inheritance."].)

The development of the tort of interference with an expected inheritance by the courts of appeals in New Mexico assists our discussion and analysis here. In *Doughty v. Morris* (Ct.App. 1994) 117 N.M. 284 [871 P.2d 380, 383] (*Doughty*), the court for the first time recognized a cause of action in New Mexico "against those who intentionally and tortiously interfere with an expected inheritance."

Briefly, the daughter in *Doughty* alleged her brother had tortiously interfered with the daughter's inheritance by coercing their severely ill mother to make certain inter vivos transfers of property that depleted the mother's estate so that there was nothing left to divide as specified in the mother's will. (*Doughty, supra*, 871 P.2d at p. 382.) Relying on Restatement, section 774B, the court in *Doughty* ruled that for the daughter to recover for tortious interference with an expected inheritance, she needed to prove "(1) the existence of an expectancy; (2) a reasonable certainty that the expectancy would have been realized, but for the interference; (3) intentional interference with that expectancy; (4) tortious conduct involved with interference, such as fraud, duress, or undue influence; and (5) damages." (871 P.2d at p. 384.) The court affirmed there was sufficient evidence in the record to support the trial court's finding that the son intentionally interfered with the daughter's expected inheritance as to the mother's three certificates of deposit and a joint savings account. (*Id.* at p. 387.)

The tort was next discussed by the New Mexico Court of Appeals in *Wilson, supra*, 55 P.3d at page 999. There, the testator's niece and nephew alleged the

testator's accountants unduly influenced the testator to execute a new testamentary plan that provided the niece and nephew with only a life estate. The testator's new testamentary plan "had the practical effect of disinheriting" the niece and nephew. (*Ibid.*)

Although the niece and nephew retained legal counsel and notified the trustee and personal representative of the testator's estate they intended to file formal testacy proceedings within the statutorily prescribed period, they never did so. (*Wilson, supra,* 55 P.3d at p. 1000.) The niece and nephew instead sued the accountants in tort for interference with an expected inheritance because the accountants had recommended the testator make charitable contributions to reduce the estate's potential tax liability and because one such accountant, who served as the auditor of the nursing home where the testator lived, suggested to the testator that the nursing home would be an appropriate charitable beneficiary. (*Ibid.*)

The *Wilson* court noted that in *Doughty* it had no reason to consider whether the tort of interference with an expected inheritance "should also be recognized when the interference with inheritance takes place in the context of a will or other testamentary device that can be challenged in probate." (*Wilson, supra,* 55 P.3d at p. 1001.) Relying on *Rienhardt v. Kelly* (10th Cir. 1999) 164 F.3d 1296 (*Rienhardt*), which interpreted *Doughty* and applied New Mexico law, the court in *Wilson* ruled the Tenth Circuit Court of Appeals "got it right" in *Rienhardt* when that court "made the pivotal distinction that in *Doughty,* '[n]o challenge to this behavior could be brought in probate proceedings, because the will remained valid and executable according to its language. Thus, to remedy this seemingly remedy-less situation, the New Mexico court [in *Doughty*] recognized the tort.' " (*Wilson, supra,* 55 P.3d at p. 1001, quoting *Rienhardt, supra,* 164 F.3d at p. 1301.)

The *Wilson* court further noted the Tenth Circuit's opinion in *Rienhardt* "appears to be in line with the weight of the case law emerging from state appellate courts. Of those states that have considered the tort of intentional interference with inheritance, most have held that claims in tort may only be brought when there is no adequate remedy in probate." (*Wilson, supra,* 55 P.3d at p. 1001, citing among authorities *Robinson v. First State Bank* (1983) 97 Ill.2d 174 [73 Ill.Dec. 428, 454 N.E.2d 288] [Ill. Supreme Ct. rejected a postprobate claim by disgruntled heirs], Fassold, *Tortious Interference with Expectancy of Inheritance: New Tort, New Traps* (2000) 36 Ariz. Atty. 26, 28–29 [stating that, in most states where the tort is recognized, a deprived legatee must seek relief through probate or show that probate is impossible before bringing such a claim].)

Noting that inheritance laws are " 'purely a creature of statute' " (as is true in California (see *In re Darling* (1916) 173 Cal. 221, 223 [159 P. 606])), the

court in *Wilson* refused to allow the niece and nephew to circumvent the probate code by " 'calling a will contest an action in tort.' " (*Wilson, supra,* 55 P.3d at p. 1002, quoting *Dragan v. Miller* (7th Cir. 1982) 679 F.2d 712, 717 (Posner, J.).) *Wilson* explained: "We feel compelled to protect the jurisdictional space carved out by our legislature when it enacted the Probate Code and created remedies, such as a will contest, designed exclusively for probate. We note that a will contest in probate requires a greater burden of persuasion than an independent action in tort. [Citation.] A presumption of due execution normally attaches to a testamentary instrument administered in probate, but not necessarily in tort. [Citations.] If we were to permit, much less encourage, dual litigation tracks for disgruntled heirs, we would risk destabilizing the law of probate and creating uncertainty and inconsistency in its place. We would risk undermining the legislative intent inherent in creating the Probate Code as the preferable, if not exclusive, remedy for disputes over testamentary documents. [Citations.]" (*Wilson,* at p. 1002.)

Referring to the rule requiring the validity of a testamentary instrument to be addressed in probate and not in a separate tort action as the "emerging majority rule" (*Wilson, supra,* 55 P.3d at p. 1003), the court in *Wilson* noted that the niece and nephew "could have addressed their undue influence claims [against the accountants] in probate. If they had been successful in setting aside [testator's new testamentary plan, they] would have received their entire expectancy under the [original] trust." (*Ibid.*)

The niece and nephew nonetheless argued in *Wilson* that absent recognition of an independent tort, tortfeasors such as the accountants could evade responsibility even if the niece and nephew had successfully set aside in probate the testator's new testamentary plan and realized their full expectancy. (*Wilson, supra,* 55 P.3d at p. 1005.) The court in *Wilson* recognized the validity of this argument, and noted the accountants "may well escape financial accountability for their alleged wrongs. However, we simply may have to tolerate that consequence as a cost of protecting the integrity of the probate process. The tort of intentional interference with inheritance did not arise out of a perceived need to punish alleged wrongdoers. The tort developed to protect valid testamentary expectancies *and to provide a remedy when the probate process proved inadequate.* [Citations.] *The proper focus of the tort is on the just distribution of estate assets; when that can be achieved in probate, the need for the tort disappears.*" (*Wilson, supra,* 55 P.3d at p. 1005, italics added;[3] see also *DeWitt v. Duce* (Fla. 1981) 408 So.2d 216, 219 [Fla. Supreme Ct. noted that "[c]ases which allow the action for tortious

---

[3] The New Mexico Court of Appeals in 2005 in *Peralta v. Peralta* (2005) 2006 NMCA 33 [139 N.M. 231, 131 P.3d 81, 84], recognized the continued validity of *Doughty* and *Wilson* when it ruled an heir could bring a tort action for interference with expectancy because if the

interference with a testamentary expectancy are predicated on the inadequacy of probate remedies"].)

The adequacy of a party's remedy in probate is also one of the justifications given by courts in those states that have declined to recognize the tort of interference with an expected inheritance. (See *Survey with Analysis in the Mountain States, supra,* 45 Idaho L.Rev. at p. 18 [noting the Mont. Supreme Ct. in *Hauck v. Seright* (1998) 290 Mont. 309 [964 P.2d 749], decided not to recognize for the first time the tort of interference with an expected inheritance because the heir had an adequate remedy in probate through the heir's successful will contest]; see also *Jackson v. Kelly* (2001) 345 Ark. 151 [44 S.W.3d 328, 333] [noting the issue of whether Ark. acknowledges the tort of interference with an expected inheritance is one of first impression, but declining to recognize the tort in the case before it because the appellant's remedy in probate court was adequate].)

### 3. *Analysis*

Here, the record shows Michael—a named executor under Janell's will—filed the probate petition on February 14, 2008. James did not object to the probate petition at or before the first hearing of the probate court on June 3, 2008. On July 14, 2008, the court admitted to probate Janell's 1983 will and the 2007 codicil that is the subject of this appeal. As a result, under Probate Code section 8270, subdivision (a), James had 120 days to "petition the court to revoke the probate of the will."

The record also shows James did not seek to revoke the probate of the will and codicil. Instead, in May 2008 he filed a "safe harbor" petition under Probate Code *former* section 21320, subdivision (a), seeking a determination that his proposed petition for tortious interference with expected inheritance would not constitute a contest within the meaning of Janell's no contest clause in the codicil. In connection with that petition, James stated his proposed petition would seek damages from Carlyn and Michael for their alleged wrongdoing, but would "*not* seek any remedy against the individuals who benefit from the Codicil." (Italics added.)

On this record, we conclude James had an adequate remedy *in probate* to challenge the codicil without resort to the tort of interference with an expected inheritance. As Janell's child and beneficiary, James had standing in

heir had challenged in probate the transfer of assets made by decedent *before* she died, the heir "would have achieved nothing because there was nothing in the estate for [the heir] to recover."

probate (see Prob. Code, § 48, subd. (a)(1);[4] *Estate of Lind* (1989) 209 Cal.App.3d 1424, 1430–1431 [257 Cal.Rptr. 853]), adequate notice of the probate petition and ample opportunity to timely challenge *in probate* the validity of the codicil. If James had moved in probate to set aside the $1 million gifts each to Jana and Jack and succeeded, Janell's estate—including the voided gifts to Jana and Jack—would then have been divided equally between James and Carlyn. In that instance, James's expected inheritance would have been fully reinstated.

James nonetheless argues his remedy in probate was inadequate because the codicil contained a no contest clause that he claims "suppressed any challenge to the Codicil in the probate action." We disagree.

We note no contest clauses are valid and enforceable in California. (*Burch v. George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92] (*Burch*); *Bradley v. Gilbert* (2009) 172 Cal.App.4th 1058, 1070 [91 Cal.Rptr.3d 680] (*Bradley*).) They serve the important public policies of discouraging litigation and giving effect to the disposition of assets owned by the testator who, once deceased, is (obviously) unable to testify on his or her own behalf regarding his or her intent in disposing of assets. (*Burch, supra,* 7 Cal.4th at p. 254.) Nonetheless, because application of a no contest clause against an unsuccessful party results in a forfeiture (*Meyer v. Meyer* (2008) 162 Cal.App.4th 983, 991 [76 Cal.Rptr.3d 546]), "it has long been the rule that [a no contest clause] must be strictly construed and given no wider scope than is plainly required by [its] terms" (*Bradley, supra,* 172 Cal.App.4th at p. 1069).

However, *if* we accepted James's argument he lacked an adequate remedy in probate merely because Janell's codicil contained a no contest clause, and *if* we afforded him the right to sue in tort for interference with an expected inheritance, we not only would undermine the important public policies served by no contest clauses, we also would all but eliminate "will contests" in probate to the extent the testamentary document(s) contained a no contest clause. (See *Cabral v. Soares* (2007) 157 Cal.App.4th 1234, 1239 [69 Cal.Rptr.3d 242] ["challenges to the validity of [a testator's] will or to the administration of [the testator's] estate must be brought in the probate proceedings"]; Prob. Code, § 7050 ["The superior court has jurisdiction of proceedings under this code concerning the administration of the decedent's estate."].) Indeed, in that situation no beneficiary would ever risk "forfeiture" based on an unsuccessful challenge in probate to a will or testament

---

[4] Probate Code section 48, subdivision (a), provides in relevant part: "[The term] 'interested person' includes any of the following: [¶] (1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding."

containing a no contest clause if that beneficiary instead could sue in tort and recover his or her expected inheritance without regard to, and the associated risk of, a no contest clause.

Moreover, effective January 1, 2010, our Legislature repealed Probate Code sections 21300 through 21308 (General Provisions) and sections 21320 through 21322 (Declaratory Relief) and enacted a major revision of our statutory scheme governing no contest clauses.[5] The new statutes limit the enforceability of no contest clauses to only three types of claims: (1) direct contests brought without probable cause; (2) challenges to the transferor's ownership of property at the time of the transfer if expressly included in the no contest clause; and (3) creditor's claims and actions based on them, if expressly included in the no contest clause. (Prob. Code, § 21311, subd. (a); see also *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 601, fn. 2 [100 Cal.Rptr.3d 622, 217 P.3d 1194].)

Thus, under the new law, the safe harbor procedure is eliminated and, among other things, a no contest clause is enforced against a "direct contest" (as defined in newly enacted Prob. Code, § 21310, subd. (b)) only when brought without "probable cause." (Prob. Code, § 21311, subd. (b) ["For the purposes of this section, probable cause exists if, at the time of filing a contest, the facts known to the contestant would cause a reasonable person to believe that there is a reasonable likelihood that the requested relief will be granted after an opportunity for further investigation or discovery."].)

In light of the Legislature's "wholesale revision[s]" to the provisions governing no contest clauses (*Giammarrusco v. Simon* (2009) 171 Cal.App.4th 1586, 1615 [91 Cal.Rptr.3d 50]), we decline James's invitation to recognize a new tort that would potentially undermine the new law governing no contest clauses and that would create sweeping changes in the administration of will contests in probate.

■ Our holding in this case is limited. Because we conclude James had an adequate remedy in probate to challenge the validity of Janell's codicil, we decline under the present circumstances to adopt the tort of interference with an expected inheritance.

---

[5] This new law does not apply to Janell's codicil, which was admitted to probate in July 2008. (See Prob. Code, § 3, subd. (e) ["If an order is made before the operative date, including an order appointing a personal representative, guardian, conservator, trustee, probate referee, or any other fiduciary or officer, or any action on an order is taken before the operative date, the validity of the order or action is governed by the old law and not by the new law. Nothing in this subdivision precludes proceedings after the operative date to modify an order made, or alter a course of action commenced, before the operative date to the extent proceedings for modification of an order or alteration of a course of action of that type are otherwise provided by statute."].) Nor do the parties contend in this appeal the new law governs Janell's codicil.

## DISPOSITION

The judgment is affirmed. Carlyn and Michael are awarded their costs on appeal.

Haller, J., and Aaron, J., concurred.

A petition for a rehearing was denied June 24, 2010, and appellant's petition for review by the Supreme Court was denied September 1, 2010, S184576.