Filed 1/29/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SUSAN L. HALPERIN, Plaintiff and Appellant, v. DAVID G. HALPERIN et al., Defendants and Respondents. | A172110 (Alameda County Super. Ct. No. 24CV067071) |

In this inheritance dispute, plaintiff Susan Halperin appeals from the trial court's judgment dismissing a complaint she filed against her brothers, David Halperin and Michael Halperin. In her complaint, Susan asserted a tort claim for intentional interference with an expected inheritance (IIEI), alleging David and Michael interfered with their father Warren Halperin's efforts to amend his trust to give Susan a distributive share equal to those of her brothers.[1] David filed a demurrer, which the trial court sustained without leave to amend. The court found Susan's civil tort claim for IIEI could not proceed because she had an adequate remedy in probate. In this appeal, Susan challenges that ruling. We find no error and affirm.

---

[1] For clarity, we will refer to the members of the Halperin family by their first names.

1

# I. BACKGROUND

## A. *Warren's Trust*

Warren established a trust in 2014. His three children—Susan, David, and Michael—were all beneficiaries of the trust. On or about January 1, 2021, Susan learned of the terms of the trust. In Susan's view, the trust was more favorable to her brothers than to her. In her operative first amended complaint (FAC) in the present case, Susan alleged that, while David and Michael were to receive their shares of the trust estate "outright and free of Trust," Susan's share consisted of IRA retirement accounts, still held in trust under unfavorable distribution terms and subject to high tax burdens upon withdrawal. Susan alleged her beneficial share had a fair market value of about $1 million less than the beneficial share of each of her brothers.

In January 2021, Susan spoke with Warren, who stated he was going to amend his trust to equalize the distributions among his three children. Warren told Susan that, as early as April 2019, he had spoken with an attorney, Paula Weaver, about making such an amendment to the trust. Susan alleges, however, that David and Michael interfered with Warren's efforts to amend the trust.

The alleged interfering conduct (most or all of which apparently occurred in 2021) included that David "was involved in many conversations with [attorney] Weaver, in which he interfered with [Warren's] instructions regarding the equalizing amendment"; David slandered Susan's "character and motives" to Warren and urged Warren to get a restraining order against Susan; David and Michael accused Susan of stealing Warren's laptop computer, and they filed a false police report about that; Michael tried to bribe Susan with Warren's money; Michael threatened to strike Susan; David demanded that Warren be evaluated for capacity; Michael and David both threatened friends of Warren's to deter them from visiting Warren or helping

2

him amend the trust; and David placed Warren in an assisted living facility and sought to limit Susan's communications with Warren.

## B. *Susan's Probate Petition*

In December 2022, Susan filed a probate petition (initiating superior court case no. RP22134888), in which she made a claim of elder isolation against David and Michael, as well as seeking to remove David from his roles as trustee of Warren's trust and as Warren's healthcare agent and financial attorney in fact. In the probate petition, Susan made many of the same factual allegations that she later made in the present civil action (as outlined in pt. I.A, *ante*) about David's and Michael's interference with Warren's effort to amend his trust.

Warren died on March 11, 2023.

On May 1, 2023, Susan dismissed her probate petition without prejudice.

## C. *The Present Action*

In March 2024, Susan filed the initial complaint in the present action (superior court case no. 24CV067071), asserting claims against David and Michael for IIEI and for intentional infliction of emotional distress. Susan dismissed the intentional infliction of emotional distress claim in July 2024. She filed the operative FAC in October 2024, asserting claims for IIEI and elder financial abuse.

Also in October 2024, David filed a demurrer to the FAC. As to the IIEI cause of action, David argued (1) Susan could not bring the claim because she had an adequate remedy in probate, (2) the claim was barred by applicable statutes of limitations, and (3) the FAC did not include sufficient factual allegations as to the tortious conduct and causation elements of the IIEI tort.

3

After a hearing, the trial court sustained the demurrer without leave to amend. The court concluded Susan had not shown she lacked an adequate remedy in probate, so under applicable case law she could not maintain an IIEI claim.[2] In its ruling, the court stated it was taking judicial notice (at David's request) of certain documents filed in the probate proceeding and in the present civil action.[3] The court later entered a judgment dismissing the FAC with prejudice.

Susan appealed.[4]

## II. DISCUSSION

### A. *Standard of Review*

"We review a trial court's ruling on demurrer de novo [citation], giving ' "the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.]" ' " (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 847.) We "treat the demurrer as admitting all material facts properly pleaded that are not inconsistent with

---

[2] The court also sustained the demurrer without leave to amend as to Susan's cause of action for financial elder abuse. Susan does not challenge that ruling on appeal.

[3] The record for this appeal includes what appears to be a copy of a request for judicial notice (RJN) that David filed in support of a demurrer to Susan's initial complaint, rather than the RJN he filed in support of his demurrer to the operative FAC. But it appears the relevant attachments to the RJN in the record—pleadings from the probate proceeding and the present civil action (documents that both parties cite in their appellate briefs)—were also attached to the later RJN that was addressed by the trial court.

[4] Although the demurrer to the FAC was filed by David (the record does not reflect that Michael joined in it), the judgment states generally that the FAC is dismissed with prejudice, without differentiating between the defendants. In this appeal by Susan, only David filed a respondent's brief. And he states Michael is not a participant in the appeal.

4

other allegations, exhibits, or judicially noticed facts[,]" but "[w]e need not accept as true . . . deductions, contentions or conclusions of law or fact." (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292.)[5]

## B. *The Tort of Intentional Interference with an Expected Inheritance (IIEI)*

The tort of IIEI was first recognized by a California court in *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039 (*Beckwith*). *Beckwith* holds that "a court should recognize the tort of IIEI if it is necessary to afford an injured plaintiff a remedy. The integrity of the probate system and the interest in avoiding tort liability for inherently speculative claims are very important considerations. However, a court should not take the 'drastic consequence of an absolute rule which bars recovery in all . . . cases' when a new tort cause of action can be defined in such a way so as to minimize the costs and burdens associated with it. [Citation.] . . . California case law in analogous contexts shields defendants from tort liability when the expectancy is too speculative. In addition, case law from other jurisdictions bars IIEI claims when an adequate probate remedy exists. By recognizing similar restrictions in IIEI actions, we strike the appropriate balance between respecting the integrity of the probate system, guarding against tort liability for inherently speculative

---

[5] There is often a second analytical step in an appeal challenging a dismissal without leave to amend upon the sustaining a demurrer. We review the denial of leave to amend for abuse of discretion. (*Morris v. JPMorgan Chase Bank, N.A.*, *supra*, 78 Cal.App.5th at p. 292.) Here, Susan makes only a cursory suggestion that she should be granted leave to amend, providing no explanation as to how an amendment would cure the defect at issue here. We therefore need not consider whether the trial court abused its discretion by sustaining the demurer without leave to amend. (*Id.* at pp. 292–293 ["[T]he plaintiff has the burden of demonstrating trial court error" and that " ' "there is a reasonable possibility . . . [she] could cure the defect" ' " by amendment.].)

claims, and protecting society's interest in providing a remedy for injured parties." (*Id.* at p. 1056.)

To state an IIEI claim under *Beckwith*, the plaintiff must plead facts to prove five elements: (1) that the plaintiff had an expectancy of an inheritance; (2) causation, i.e., facts demonstrating with reasonable certainty that the plaintiff would have received a bequest or devise if not for an interference by the defendant; (3) intent, i.e., that the defendant knowingly and deliberately interfered with the expected inheritance; (4) that the defendant's deliberate conduct was independently wrongful, for a reason other than that it interfered with an expected inheritance; and (5) resulting damage. (*Beckwith*, *supra*, 205 Cal.App.4th at p. 1057.)

The IIEI defendant must also direct the independently tortious conduct at someone other than the plaintiff (usually the testator). (*Beckwith*, *supra*, 205 Cal.App.4th at pp. 1057–1058.) "The cases firmly indicate a requirement that '[t]he fraud, duress, undue influence, or other independent tortious conduct required for this tort is directed at the testator. *The beneficiary is not directly defrauded* or unduly influenced; the testator is.' [Citation.] In other words, the defendant's tortious conduct must have induced or caused the testator to take some action that deprives the plaintiff of his expected inheritance." (*Ibid.*)

## C. *The Existence of an Adequate Probate Remedy*

In ruling on David's demurrer, the trial court found that, because Susan did not show she lacked an adequate probate remedy, she could not pursue her IIEI claim. Susan challenges the court's conclusion on this point. We find no error, and we therefore affirm.[6]

---

[6] Because we resolve the appeal on this ground, we need not address the other arguments presented by David in his demurrer or in his appellate

6

As Susan concedes, a plaintiff cannot recover for IIEI if "an adequate probate remedy exists." (*Beckwith*, *supra*, 205 Cal.App.4th at p. 1056; see *id.* at p. 1058 ["the tort . . . developed to provide a remedy when . . . the plaintiff had no independent tort action because the underlying tort was directed at the testator and . . . the plaintiff had no adequate remedy in probate"]; *Munn v. Briggs* (2010) 185 Cal.App.4th 578, 587, 591–592 (*Munn*) [same].) For example, in *Munn*, a brother brought an action against his sister for IIEI, alleging she exerted undue influence on their mother and convinced her to execute a codicil that reduced his inheritance. (*Id.* at pp. 581, 584.) The appellate court affirmed the trial court's order sustaining the sister's demurrer, concluding that, even if California recognized the tort of IIEI (it had not at the time), the brother could not recover because he had an adequate remedy in probate. (*Id.* at pp. 584, 591–592, 593–594.) He had standing in probate, adequate notice of the probate petition, and adequate opportunity to challenge the validity of the codicil in probate. (*Id.* at pp. 591–592.)

Here, as Warren's child and beneficiary, Susan had standing in probate (see Prob. Code, § 48, subd. (a)(1);[7] *Munn, supra,* 185 Cal.App.4th at pp. 591–592), and she had the ability to (and did) seek relief based on David's and Michael's alleged tortious interference with Warren's intent to modify his trust to equalize the distribution among his children. In her 2022 probate

briefing, such as his contentions that the IIEI claim (1) is barred by applicable statutes of limitations, (2) is inadequately pleaded as to certain elements of the tort, and (3) is barred under the sham pleading doctrine.

[7] Probate Code section 48, subdivision (a), states in relevant part: "[The term] 'interested person' includes any of the following: [¶] (1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding."

7

petition, Susan alleged she had standing, and, relying on various provisions of the Probate Code, including Probate Code section 17200,[8] she sought several forms of relief, including David's removal as trustee and as Warren's healthcare agent and attorney in fact.  Susan chose to dismiss her petition after Warren's death and did not file a new one, but it is undisputed she had access to probate.  (*Beckwith*, *supra*, 205 Cal.App.4th at p. 1053 ["the tort of IIEI is only available when the aggrieved party has essentially been deprived of access to the probate system"].)

The situation here thus contrasts with *Beckwith*, *supra*, 205 Cal.App.4th 1039, where the plaintiff could not seek relief in probate.  In *Beckwith*, the plaintiff, Brent Beckwith, was the long-term partner of Marc MacGinnis, who had prepared but not executed a will dividing his estate between Beckwith and Susan Dahl, MacGinnis's sister.  (*Id.* at pp. 1046–1047.)  MacGinnis died intestate, and Dahl filed a probate petition seeking distribution of MacGinnis's estate to herself as his sole surviving family member.  (*Id.* at p. 1048.)  Beckwith filed an opposition to the petition, but the probate judge found Beckwith had "no standing [in probate] because he was 'not a creditor of the estate' and he had 'no intestate rights' with regard to MacGinnis's estate."  (*Id.* at p. 1048; see *id.* at pp. 1047–1048.)

---

[8] Although Susan's petition focused in large part on seeking to remove David from his position as trustee and related roles, we note that Probate Code section 17200 allows a beneficiary to seek various forms of relief. Probate Code section 17200 authorizes a beneficiary to petition the court "concerning the internal affairs of the trust" (Prob. Code, § 17200, subd. (a)), a statutory phrase that is defined to include such matters as determining the validity of a trust provision (*id.*, subd. (b)(3)), determining to whom property shall pass upon termination of the trust (*id.*, subd. (b)(4)), instructing the trustee (*id.*, subd. (b)(6)), compelling redress of a breach of the trust by any available remedy (*id.*, subd. (b)(12)), and approving or directing the modification or termination of the trust (*id.*, subd. (b)(13)).

Beckwith also filed a civil action against Dahl, asserting IIEI and other tort claims arising from alleged fraudulent conduct by Dahl that prevented MacGinnis from executing the will that would have divided his estate between Beckwith and Dahl. (*Beckwith*, *supra*, 205 Cal.App.4th at pp. 1048, 1046.) In that context, the appellate court in *Beckwith* recognized the tort of IIEI for the first time in California, although the court concluded Beckwith had not yet alleged sufficient facts to support the claim. (*Id.* at pp. 1046, 1056, 1059.)

Susan contends that, although she had standing in probate, the trial court should have allowed her civil tort claim for IIEI to proceed because any remedies she had in probate were not adequate. (See *Beckwith*, *supra*, 205 Cal.App.4th at pp. 1056, 1058 [IIEI claims are barred where probate remedy is adequate]; *Munn, supra,* 185 Cal.App.4th at pp. 587, 591–592 [plaintiff had adequate remedy in probate and therefore no need to resort to the tort of IIEI].) In making this argument, Susan does not identify potential remedies or procedural avenues and explain why they were inadequate or inappropriate. Instead, she asserts broadly that she could not obtain adequate relief in probate because no amendment to Warren's trust was executed, so "there was no instrument to contest, construe, or set aside, and probate cannot award tort damages against individual actors."

This argument does not persuade us that Susan could not have obtained appropriate relief in probate. First, she has not shown that the lack of an executed trust amendment with a revised distributive formula prevented her from arguing Warren intended to make such a revision. Indeed, as noted, she sought relief in her 2022 probate petition based on the same factual allegations (i.e., that David's and Michael's interference prevented Warren from implementing his intent) that she has now included

9

in her IIEI tort cause of action. As that petition reflects, and as David has argued in the trial court and on appeal, Susan had the opportunity to pursue remedies in probate to address this issue. (See, e.g., Prob. Code, § 17200 [petition concerning internal affairs of trust].)[9]

Second, the unavailability in probate of tort damages against individual actors does not establish the inadequacy of probate and provides no basis for an IIEI claim to proceed. We decline to recognize the availability of tort relief whenever probate fails to afford a remedy that is identical to the IIEI tort in all respects. Were we to accept Susan's invitation to do so, we see no limiting principle that would maintain a meaningful distinction between tort and probate relief, given the basic difference between an " 'in rem' " probate proceeding to determine the proper disposition of a testator's estate on the one hand, and an " 'in personam' " tort action seeking recovery from the alleged tortfeasor on the other. (*Munn, supra,* 185 Cal.App.4th at p. 587 [" 'A tort action can result in a judgment against the defendant, as the alleged tortfeasor, to be paid from his personal assets. A probate proceeding determines what will happen to the assets in the testator's probate estate.' "].)

Nor does a desire to punish alleged tortfeasors by imposing damages justify an IIEI claim where probate provides an adequate remedy. " 'The tort of intentional interference with inheritance did not arise out of a perceived need to punish alleged wrongdoers. The tort developed to protect valid

---

[9] We do not undertake to catalog the precise remedies and procedural options Susan could have pursued, but on this record, we conclude she has not shown she lacked an adequate remedy and therefore has not met her burden as the appellant to show trial court error. (E.g., *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 [trial court judgment is presumed correct, and appellant has burden to show error].)

testamentary expectancies *and to provide a remedy when the probate process proved inadequate.* [Citations.] *The proper focus of the tort is on the just distribution of estate assets; when that can be achieved in probate, the need for the tort disappears.'*" (*Munn, supra,* 185 Cal.App.4th at p. 590; accord, *Beckwith, supra,* 205 Cal.App.4th at p. 1052 [the IIEI tort is to be a "last recourse"].)[10]

Susan argues *Gomez v. Smith* (2020) 54 Cal.App.5th 1016 (*Gomez*) supports her view, but we disagree. As the trial court in the present case noted, the appellate court in *Gomez* (an appeal after a bench trial and judgment) did not discuss whether the IIEI plaintiff there had an adequate remedy in probate. In the *Gomez* case, Frank Gomez (Frank) became ill and attempted to establish a new living trust that would provide for his wife, Louise Gomez (Louise), during her lifetime. (*Id.* at p. 1019.) Frank's attorney attempted to have Frank sign the new living trust documents the day after Frank was sent home under hospice care. (*Ibid.*) But Frank's children from a prior marriage, who did not approve of Frank's marriage to Louise, intervened and prevented the attorney from entering Frank's home. (*Ibid.*) Frank, who was bedridden, died early the next morning. (*Ibid.*)

Louise sued Frank's children, asserting claims that included IIEI, and after a bench trial, the trial court ruled in favor of Louise on the IIEI claim. (*Gomez, supra,* 54 Cal.App.5th at pp. 1019–1020.) One of the children (Tammy) appealed, and the appellate court rejected her challenges to the

---

[10] Other differences, such as the higher burden of persuasion that may apply in some probate proceedings, also provide no basis for finding probate to be inadequate. (*Munn, supra,* 185 Cal.App.4th at p. 590.) Indeed, courts emphasize the importance of protecting the legislatively created " 'jurisdictional space' " for probate proceedings and the different rules that may apply there. (*Ibid.*)

11

judgment, most of which centered on whether substantial evidence supported the trial court's findings as to the substantive elements of the IIEI tort. (*Id.* at pp. 1020, 1027, 1029, 1032.) The appellate court did not consider or address any question as to whether Louise had an adequate remedy in probate. Accordingly, even if we view the facts in *Gomez* as being somewhat similar to the alleged interference by David and Michael here (i.e., they allegedly interfered with Warren's ability to implement his intent to modify the trust),[11] we do not view *Gomez* as precedential on the question presented here—whether Susan had an adequate remedy in probate. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043 ["It is axiomatic that cases are not authority for propositions that are not considered."].)

Susan contends briefly that, rather than dismissing her complaint, the trial court should have "transferred the case to probate," which Susan argues would have been appropriate under Code of Civil Procedure section 396. We disagree. As an initial matter, Susan provides no argument as to why the current version of that statute—which in some circumstances requires the transfer of an "appeal or petition" from the superior court to an appellate court (Code Civ. Proc., § 396, subds. (a)–(b))—has any application to her civil tort complaint.[12]

---

[11] One factual difference, of course, is that in *Gomez*, Frank died the day after the interference occurred (*Gomez, supra,* 54 Cal.App.5th at p. 1019), while in the present case Susan knew well before Warren's death that David and Michael allegedly had interfered with Warren's ability to modify his trust. As a result, Susan could, and did, pursue probate remedies at that time.

[12] Code of Civil Procedure section 396 provides: "(a) No appeal or petition filed in the superior court shall be dismissed solely because the appeal or petition was not filed in the proper state court. [¶] (b) If the

But more fundamentally, the issue presented in this appeal is not which department of the superior court (one hearing probate matters or general civil cases) should hear Susan's IIEI tort claim, but whether she can maintain such a claim at all when she had an adequate probate remedy. Indeed, we note that, in *Munn, supra,* 185 Cal.App.4th 578, it was "[t]he probate court" that sustained a demurrer to the plaintiff's IIEI cause of action (*id.* at p. 584), a result the appellate court affirmed on the ground the plaintiff "had an adequate remedy *in probate*" (i.e., the plaintiff's ability to bring a will contest to challenge the objectionable codicil). (*Id.* at pp. 591–592, 594.) As discussed, the trial court correctly reached the same result here. There was no basis for a transfer.

Finally, because Susan has not shown she lacked an adequate remedy in probate, we reject her suggestion that the trial court's ruling ran afoul of Civil Code section 3523, which provides that, "[f]or every wrong there is a remedy." (See *Beckwith*, *supra*, 205 Cal.App.4th at pp. 1051–1052 [IIEI tort should be recognized where necessary to provide a remedy].)[13]

---

superior court lacks jurisdiction of an appeal or petition, and a court of appeal or the Supreme Court would have jurisdiction, the appeal or petition shall be transferred to the court having jurisdiction upon terms as to costs or otherwise as may be just, and proceeded with as if regularly filed in the court having jurisdiction."

[13] Susan also argues *Hamilton v. Green* (2023) 98 Cal.App.5th 417 (a decision she claims underlies the trial court's decision here, although the trial court did not cite it) is distinguishable. In *Hamilton*, the appellate court held the plaintiffs' tort claims relating to the alleged forgery of a trust amendment had the "practical effect" of challenging the validity of the amendment and therefore were subject to the 120-day limitations period in Probate Code section 16061.8 for trust contests. (*Hamilton*, at pp. 424–425, 420.) We need not address Susan's argument on this point, as we do not hold Susan's tort claim here is a trust contest that is subject to the limitations period

13

## III. DISPOSITION

The judgment is affirmed.  David shall recover his costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

---

addressed in *Hamilton*.  As discussed, we hold only that Susan's IIEI claim cannot proceed because she had an adequate remedy in probate.

Trial Court:          Superior Court of California, County of Alameda

Trial Judge:         Hon. Elizabeth L. Riles

Counsel:             Brereton, Mohamed, & Korte, Aaron J. Mohamed and
                         Emily S. Humy for Plaintiff and Appellant.

                     Haskett Law Firm, Amber C. Haskett; Buchalter and
                         Robert Collings Little for Defendant and Respondent
                         David G. Halperin.